· CASE 35.—ACTION BY R. A. HURST AGAINST G. P. GOFF.—
November 5, 1909.

## Goff v. Hurst

Appeal from Breathitt Circuit Court.

· J. P. ADAMS, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

Brokers—Right   to ˙ Commissions—Efficient  Agent—Procuring
Cause of Contract.—Where a real estate broker who had been
authorized to sell the timber on a tract of land merely in-
formed the purchaser, who had been negotiating with the
owner for some time in regard to purchasing the land, that he
had the land · for sale, but did nothing further, and knew
nothing of the subsequent negotiations which led up to the
sale, which was not made until the vendor ·agreed that a.
mill and the down timber would be included, and also agreed
to the purchaser's terms as to time of payment, he was not
the efficient agent in, or the procuring cause of the contract,
so as to entitle him to a commission.

E. C. HAYDEN, W. W. McGUIRE and O. H. POLLARD for ap-
pellant.

J. J. BACH for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Re-
versing.

R. A. Hurst brought this suit against C. P. Goff.
He alleged in his petition that Goff had employed him
to procure for him a purchaser for the timber on a
tract of 1,076 acres of land known as the Ware Can-
nel Coal tract, and had agreed to pay him $500 upon
condition that he would procure him a· purchaser for

the timber at the price of $10,000; that he procured such a purchaser who bought the property, and that Goff had refused to pay him the $500.  Goff filed an answer in which he denied that Hurst had procured a purchaser of the timber, or that the sale was in any wise induced by him.  There was a trial of the issues thus joined resulting in a verdict and judgment in favor of the plaintiff.  Goff appeals.

The evidence introduced by Hurst on the trial was in substance as follows: Samuel E. Patton, in the spring of 1906, had some correspondence with Goff relative to the purchase of the timber, but they came to no agreement.  In October the negotiations were renewed, and in December no agreement between them had been reached.  At this time Hurst met Goff in Jackson and had a talk with him about finding him a purchaser for the timber.  On December 6th he wrote Goff the following letter: "Jackson, Ky., Dec. 6, 1906.  Cas. Goff, Esq., Paris, Ky.  Dear Sir: I had a talk with you about the property you were interested in in this county last fall and you indicated to me that if I found a purchaser to let you know and you would give me the right to sell same.  I have a purchaser and he will act promptly.  Please put the lowest price on the timber of each tract and give me the number of acres and the location of each tract and at once, and write me by return mail and oblige, Respectfully, R. A. Hurst."  On December 10th Goff wrote Hurst as follows: "Paris, Ky., Dec. 10, 1906. Mr. R. A. Hurst, Jackson, Ky.  Dear Sir: The only piece of timber we are offering now for sale is a boundary of 1,076 acres at the mouth of Troublesome Creek, known as the Ware Cannel Coal Co.'s boundary.  The standing timber on this boundary I offer

for $10,000.00. If you can find a buyer at the price will allow you 5 per cent or $500.00. Very Resp., C. P. Goff.''

Hurst immediately upon receiving this letter from Goff saw Patton and informed him that he had the tract of land for sale, and that it could be purchased for $10,000. He asked him to take the matter up with Goff. Patton said he would examine the timber, and take the matter up with Goff. He did make an examination of the timber, and on the 31st of December he closed a trade with Goff, by which he paid Goff $10,000 for the timber on the land standing and down and a mill Goff owned. Hurst did not noti- fy Goff that Patton was the man he was furnishing as a buyer. He did not introduce Patton to Goff. He knew nothing of the correspondence carried on be- tween them for the sale of the timber. He was not present at any of the meetings they had, and knew nothing of them. He did not notify Goff at any time that he had seen Patton about the timber, and Goff did not know that Hurst claimed to have had any- thing to do with the matter until a month after the trade was made. Patton did not buy the timber through Hurst, but bought it independently of him of Goff, and he did not make the trade with Goff until Goff agreed to put in the mill and down timber, and also agreed to his terms as to the time of payment of the price. The rule is that, to be entitled to a com- mission, a broker must be an efficient agent in, or the procuring cause of the contract, or it is sometimes expressed he must be the primary procuring cause or controlling cause. Collier v. Johnson, 67 S. W. 830, 23 Ky. Law Rep. 2453, and cases cited. In the case at bar Hurst was in no sense the efficient or procur-

ing cause of the contract.  At the time that Hurst saw Patton, he had been negotiating for some months with Goff for the purchase of the timber, and Goff had priced it to him at $10,000.  Hurst did nothing except to see Patton and inform him that he had the tract of land for sale, and ask him to take the matter up with Goff.  He gave Patton no information that he did not already have except to inform him of his agency. After telling Patton this, he did not see Patton any more and had nothing to do with the matter; but Goff went on and made the trade with Patton without any help from Hurst.  To say on this proof that Hurst was the primary controlling cause of the contract would be to make the rule mean nothing and to ignore the principle on which the rule rests.  On the admitted facts the court should have instructed the jury peremptorily to find for the defendant. Alexander v. Breeden, 14 B. Mon. 154, is not like this case.  There the agent procured the purchaser, and the owner of the property prevented him from selling it for the price named as he would have done but for the owner's interference.  In Coleman v. Meade, 13 Bush, 358, the broker procured the purchaser, and he was accepted by the owner of the property.

Judgment reversed and cause remanded for further proceedings consistent herewith.