## Treacy v. Gilman.

(Decided December 10, 1914.)

### Appeal from Fayette Circuit Court.

1. **Brokers—Real Estate Agents—When Entitled to Commission.—** Where the owner of property puts it into the hands of a real estate agent for sale, and the agent finds a purchaser, but the contemplated purchaser and the owner cannot agree on terms, and the owner, with a view of avoiding the agent's commission, withdraws the property from the hands of the agent and breaks

off the negotiations with the purchaser but thereafter sells the property to the purchaser brought to his attention by the agent, or to a third person for him, the agent should be treated as the procuring cause of the sale and entitled to his commission.

2. Brokers—Real Estate Agents—When Agents Not Entitled to Commission.—When the owner of property places it for sale with a real estate agent and afterwards, having a right so to do, withdraws it from him, in good faith, and without any view of saving the commission, he may sell the property to the purchaser brought to his notice by the real estate agent without being liable to the agent for commissions.

ALLEN & DUNCAN and CHESTER D. ADAMS for appellant.

HUNT, BULLOCK & HUNT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant, Treacy, who will be called plaintiff, against the appellee, Gilman, who will be called defendant, to recover commissions alleged to be due him on account of the sale of real estate owned by the defendant. On a trial of the case, after the evidence for the plaintiff had been finished, the court directed the jury to return a verdict for the defendant, and of this ruling the plaintiff complains.

Stating the material part of the evidence of the plaintiff in narrative form, he said that he was engaged in the real estate and insurance business in Lexington and had known the defendant for many years; that some time in July, 1912, he discovered that a Mr. Beard was looking around for desirable property, and, believing that some property owned by the defendant was for sale, he asked the defendant about it, and was told that it was for sale and that the price was twenty thousand dollars, but that out of this he would pay the commission; that in July the defendant, Mr. Beard and himself, were looking at the property and discussing the contemplated trade, and when Beard asked defendant what he wanted for the property, he said twenty thousand dollars, whereupon Beard replied that was too high and offered him fifteen thousand dollars, which defendant declined to accept, insisting upon twenty thousand dollars; that after this other interviews took place between the parties, and finally Beard increased his offer to $17,500, which was rejected by defendant; that on September 14th, and while negotiations were pending, the defendant asked him how much his commission would be, and he said six hundred

dollars; that a few days later, after consulting with Beard, he proposed to defendant, in writing, that Beard would pay twenty thousand for the property, fifteen thousand in cash and a note for thirty-eight hundred and a house and lot valued at twelve hundred. That the contract contained the further stipulation that a telephone pole and watchman's station were to be removed from near the premises. That defendant said he would not consider the proposition at all, and thereupon Beard said, "I have made up my mind to make you another offer of eighteen thousand dollars for the property, and that is all"; that when this proposition was made and rejected, defendant said his commission was too high and notified him that he would withdraw the property from his hands. That after this he asked defendant if he had heard anything further from Beard, and he said he had not.

It also appears that about two weeks after this, and on October 1, 1912, the defendant sold the property to the Security Trust Company of Lexington for nineteen thousand dollars. The circumstances connected with this sale, as related by Mr. Manning, secretary of the company, are, in substance, these: He said that Beard came to him as secretary and requested him to make a proposition to the defendant relating to the purchase of the property; it being understood that if the property was bought, it should be conveyed by the Trust Company to Beard; that he thereupon had a conversation with the defendant, in which the defendant said he wanted twenty thousand dollars, but finally agreed to accept nineteen thousand, with the condition that the pole and watchman's house were to be taken away. He said the title to the property was taken in the name of the Security Trust Company, and that he did not tell the defendant, either before or at the time the deed was made, that the Trust Company was buying the property for Beard, or that Beard had any interest in the transaction; that the property was paid for by the check of the Trust Company, as Beard told him not to inform the defendant that the Trust Company was buying it for him, and that, so far as he knew, the defendant did not know anything about Beard's connection with the purchase.

Beard, after corroborating in part the evidence of the plaintiff, testified that a few days after negotiations were broken off and defendant refused to accept the written offer, he saw the defendant and told him they

ought to get together and make a trade, and defendant said, "You have got to get rid of Treacy, and then I will talk to you," "and then I said, 'I have nothing to do with Treacy,' and we let it go at that; so we quit right there." He further said that he had never offered defendant nineteen thousand dollars for the property, or more than $17,500; that he did not authorize the plaintiff to make the written proposition to the defendant, but that he was present when this proposition in writing was made and defendant refused to accept it; that probably he might have told the plaintiff he would give eighteen thousand dollars for the property, but, if so, he did not remember it.

This is the substance of all the evidence introduced, and, on this evidence, it is insisted by counsel for the plaintiff, that he was entitled to go to the jury upon three questions: "(1) Whether Mr. Treacy was the procuring cause of the sale; (2) whether the negotiations were broken off by Mr. Gilman in good faith or for the purpose of avoiding the payment of Mr. Treacy's commission; (3) whether, in selling to Mr. Manning, he had reasonable grounds to believe and ought to have known that in selling to Mr. Manning, or rather the Security Trust Company, he was, in fact, selling to Mr. Beard."

Returning now briefly to the evidence, we think it fairly shows that the plaintiff originally brought together the purchaser, Beard, and the defendant, but it also shows that, although they discussed the purchase of the property several times, Beard never made an offer that the defendant would accept, and because of this fact negotiations were broken off between them; that in all the negotiations that took place between the parties, the defendant was insisting that he would not take less than twenty thousand dollars for the property, but it appears that out of this he expressed, at one time, a willingness to pay the plaintiff's commission, but afterwards objected to the payment of it on the ground that it was too high.

It further shows that after the property had been withdrawn from the hands of Treacy and all negotiations concerning the sale of it to Beard had been broken off, the defendant sold the property in good faith to the Security Trust Company without any notice or information that Beard was interested in the purchase.

If the negotiations between Beard and the defendant brought about by the plaintiff in the first instance had

been broken off by the defendant to save the commissions of Treacy, and he had afterwards sold the property to Beard or to the Security Trust Company, or any other third person, knowing that it was really a sale to Beard, and that Beard was in fact the real purchaser, there would be much force in the contention of counsel that the defendant should account to the plaintiff for the commissions, upon the theory that the defendant, in breaking off negotiations and afterwards selling the property to Beard, or to a third person for him, was influenced to break off the negotiations with a view of saving the commissions.

We think that where the owner of property puts it in the hands of a real estate agent for sale, and the agent finds a purchaser, but the contemplated purchaser and the owner cannot agree on terms, and the owner, with a view of avoiding the agent's commission, withdraws the property from the hands of the agent without his consent and breaks off the negotiations with the purchaser, but thereafter sells the property to the purchaser brought to his attention by the agent, or to a third person who he knows is acting for him, the agent should be treated as the procuring cause of the sale and entitled to his commission.

But in this case there are two obstacles in the way of a recovery by the plaintiff. In the first place, we think the evidence plainly shows that the negotiations between Beard and the defendant were broken off, not to save commissions, but because Beard did not at any time offer to the defendant a price that he was willing to accept for the property; and, second, because there is no evidence that the defendant, in selling the property to the Trust Company, knew that it was buying it for Beard, or that Beard had any interest in the purchase.

It is said that as in the negotiations between the Trust Company and the defendant it was understood, if not agreed, that the telephone pole and the watchman's house should be removed, this was sufficient to put the defendant upon notice that Beard was the real purchaser of the property, because the removal of these things was discussed in the proposition made by the plaintiff and Beard to the defendant. We do not, however, attach to this indefinite circumstance the weight given to it by counsel, and, aside from this, there is no circumstance connected with the transaction tending in the slightest degree to show that the defendant knew that the Trust Company was buying the property for Beard.

Under the facts of this case, the defendant had the undoubted right at any time to dispense with the services of the plaintiff as agent and to take the property out of his hands, and that he did do this is shown by the evidence of plaintiff, who says: "He, defendant, asked me if it was necessary to give me a written notice to withdraw it from me, and I told him no, and he says, 'I now notify you that we will consider the trade off,' and I told him, 'If you sell that property to Mr. Beard or any one else for Mr. Beard, I will claim my commission.'" And this was the last conversation he ever had with the defendant in regard to the matter, except he said that he met the defendant once afterwards and asked him "If he had heard anything further from Mr. Beard, and he said he had not. Q. Say anything further? A. No, sir. Q. As to whether or not he thought Mr. Beard was going to take the property? A. I don't recall now the conversation."

In Vreeland v. Verterlein, 33 N. J. Law, 247; Plant v. Thompson, 42 Kan., 664, 16 Am. State Reports, 512; Hoadley v. Savings Bank, 71 Conn., 599, 44 L. R. A., 321; Branch v. Moore, 105 S. W., 1178; 84 Ark., 462; Henninger v. Burch, 90 Minn., 43; Coleman v. Meade, 13 Bush, 358; Stedman & Bowman v. Richardson, 100 Ky., 79, and in many other cases, the general rule is announced that where the real estate broker brings the parties together and is the procuring cause of the sale, he may recover his commissions, although the sale may, in fact, be made directly by the owner to the purchaser brought to his attention by the real estate broker. But the facts of this case, as we have stated them, do not bring it within the scope of this rule.

The property had been in good faith withdrawn from the hands of the broker by the owner and negotiations between the owner and the contemplated purchaser had in good faith been broken off. They were not renewed, nor did the owner sell the property to the purchaser brought to his notice by the broker, or knowingly to a third person for him.

We think the facts of this case are quite similar to the facts in the case of Stedman & Bowman v. Richardson, *supra,* and that the rule laid down in that case is controlling here. It appears from the opinion that Richardson placed his property in the hands of Stedman & Bowman, real estate agents, for sale, under an agreement that if they found a purchaser he would pay them an

agreed commission. It seems that they did find one O. H. Chenault and showed him the property, but he did not buy it. After this, the property was taken out of their hands by Richardson, and thereafter he sold to Chenault. In holding that the agent could not recover, the court placed its decision upon the ground that Richardson acted in good faith in withdrawing the property from the hands of the agent, and at the time the sale was made to Chenault the agency had been terminated.

Upon the facts appearing in the record, the ruling of the lower court in taking the case from the jury was correct, and the judgment is affirmed.