## Hearne, et al. v. Dunn.

(Decided October 7, 1915.)

### Appeal from Scott Circuit Court.

1. Brokers—Sales—Commission.—To entitle a real estate broker to a commission for making a sale, he must be an efficient agent in, or the procuring cause of, the sale; or, as it is sometimes expressed, he must be the primary, procuring or controlling cause.

2. Brokers—Sales—Commission.—Where a real estate agent, who had a farm for sale, failed to describe the farm to the proposed buyer, or to tell him the name of the owner, and the proposed buyer subsequently came into communication with the owner through the instrumentality of a third person, and bought the farm, the agent was not the procuring cause of the sale, and was not entitled to a fee therefor.

BRADLEY & BRADLEY for appellants.

FORD & FORD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.—
Reversing.

Desiring to sell her farm of 262 acres in Jessamine
County, and acting through her husband, W. F. Hearne,,
the appellant, Mrs. Florence Hearne, placed it in the
hands of A. C. Dunn, the appellee, a real estate agent at
Lexington, for sale.

W. D. Watson lived in Georgetown; his son-in-law,
Charles Anderson, lived in Jessamine County, upon a
farm about three and one-half miles from the Hearne
farm.

Dunn was introduced to Watson on "Cheapside" in
Lexington, and undertook to sell him the Hearne farm,
without telling Watson who owned the farm, and without
describing it further than to say that it was within a
stone's throw of the farm of his son-in-law, Anderson.

Watson showed a willingness to consider the pur-
chase, provided he could exchange some Georgetown real
estate as a part of the purchase price for the farm. Dunn
endeavored to notify Hearne of Watson's proposition,
by telephoning to Hearne at Nicholasville, but did not
find him until after Watson had left for Georgetown.

Dunn says that in this telephone conversation with
Hearne, he informed him that Watson, of Georgetown,
was a prospective purchaser of the Hearne farm, pro-
vided Watson could trade in his Georgetown property,
and that Hearne responded that the proposition to ex-
change the Georgetown property was all right, if it was
good enough, and they could agree about it. Hearne ad-
mits that Dunn tried to tell him the name of the proposed
purchaser, but that he was not able to understand the
name, over the telephone. Dunn thereupon called up
Watson at Georgetown; told him the substance of his
conversation with Hearne, without mentioning Hearne's
name; made an engagement with Watson to go to see the
farm on the following Monday; and of this engagement
he notified Hearne by telephone.

On Sunday, however, Watson telephoned Dunn that
he could not keep his engagement on Monday on account
of another business engagement in Louisville, but that
he would go with Dunn on Tuesday or Wednesday if it
was not raining; and, that if it was raining on those days
they would go on the first fair day.

It rained on Tuesday and Wednesday, and no attempt was made by either Dunn or Watson to keep the engagement.

On a day later in the week, Watson visited his son-in-law Anderson in Jessamine County, and Anderson, who had theretofore made a few sales of farms in the neighborhood, told Watson that the Hearne farm was for sale, and suggested that they should go there and examine it. Anderson drove Watson over to the Hearne farm, and Watson went over it in company with Hearne.

When Anderson introduced Watson to Hearne, Hearne inquired if Watson was the man that Dunn had been talking with about buying his farm, and Watson answered that he did not know, as Dunn had never told him what farm he was trying to sell. After making a thorough examination of the farm, Watson expressed a willingness to buy it, provided he could trade in his Georgetown property, and his wife would be satisfied with it.

Upon Watson's return home to Georgetown that night, he was called up by Dunn over the telephone, evidently for the purpose of carrying out their engagement to visit the Hearne farm, and Watson told him, in substance, that he had that day gone over the Hearne farm, and had it under consideration. Dunn then telephoned to Hearne telling him what Watson had said, and suggesting that Hearne go with him to Georgetown to visit the Watson property. Hearne declined the invitation, upon the idea that he was making the trade with Watson direct, and without the assistance of Dunn.

Watson, in company with his wife, made a second visit to the Hearne farm shortly thereafter, and this visit resulted in a sale of the Hearne farm to Watson for $27,250.00.

Upon this second visit, when it appeared that Hearne and Watson were about to trade, Hearne turned to Anderson and asked him what his fee would be for making the sale, it appearing that Hearne had agreed to give Anderson a fee in case he made the sale. Anderson replied that if they could trade he would not stand in their way, but would give his fee to his father-in-law, and ask nothing of Hearne.

Dunn brought this action for his commission of two per cent. upon the purchase price, and recovered a verdict and judgment for $545.00. Hearne and wife appeal,

and insist that their motion for a peremptory instruction should have prevailed, because the uncontradicted proof showed that Dunn did nothing to bring about the sale.

Dunn admits he never told Watson that it was the Hearne farm he was trying to sell him, and that he did not describe it with any greater particularity than to say it was within a stone's throw of Anderson's residence, while it was, in fact, three and one-half miles distant therefrom. Indeed, Dunn testified that he made it a point not to let Watson know what farm he proposed to sell him. It thus appears that Watson and Hearne were brought together solely by the effort of Anderson, and that Dunn's work, by reason of his not disclosing Hearne's name to Watson, was not a factor in making the sale. Appellee's counsel would give importance to the fact that Dunn told Hearne that Watson was the purchaser; but we give little importance to that fact because it had no part in bringing Watson and Hearne together.

In Greene v. Owings, 19 Ky. L. R., 580, 41 S. W., 264, we said:

"To entitle a real estate agent to compensation from a person having property for sale, something more is ordinarily necessary and implied than merely finding a person willing or desiring to buy. That can be done by advertising the sale of the property in a newspaper or by handbill. And in this case there appeared to be no difficulty in finding a purchaser, for there were other agents besides plaintiffs who called the attention of Speer to the fact appellant's farm was for sale. But the special service which he alleges, and introduced evidence tending to show, he desired performed by a real estate agent, and for which he agreed to pay, was the sale of his farm at a reasonable price and upon satisfactory terms. The evidence shows appellees did not do anything more to earn the commission they sue for than call attention of Speer to the fact the farm was for sale. They did not direct his attention to the character or value of it, bring buyer and seller together, carry on negotiations between them; nor were they even present when the terms were agreed on and sale was consummated. All that was done by another agent, whom appellant paid therefor, as was shown by competent evidence."

In Collier & Harbison v. Johnson, 23 Ky. L. R., 2453, 67 S. W., 830, the court said:

"In McClave v. Paine, 49 N. Y., 561 (10 Am. Rep. 431), the court said: 'To earn his commission the broker must be an efficient agent in or the procuring cause of the contract.'

"By other authorities it is said that he must be the primary procuring cause, or the efficient or effective cause; but all these expressions mean much the same thing."

In Hopkins v. Mosely, 31 Ky. L. R., 1308 105 S. W., 104, we further said:

"Our opinion is that when property has been listed for sale with a number of real estate agents, the one who succeeds in bringing the seller and purchaser together and induces them to enter into a contract is the one who has earned the commission, and this is true regardless of the question as to who first introduced the seller and purchaser."

In Goff v. Hurst, 135 Ky., 276, in laying down the rule as to what must be done by a real estate agent before he is entitled to his fee, we said:

"The rule is that, to be entitled to a commission, a broker must be an efficient agent in, or the procuring cause of the contract, or as it is sometimes expressed he must be the primary procuring cause or controlling cause."

See also Kice v. Dugan, 143 Ky., 678; Treacy v. Gilman, 161 Ky., 517.

Applying the rule thus announced to the facts of this case, it will be seen that Dunn was not entitled to compensation for making the sale, for the reason that he did not make it; he was not the primary, procuring, or controlling cause thereof. The sale was made wholly through the suggestion of Anderson; and the fact that it so happened that Anderson's suggestion caused Watson, who was Dunn's customer, to buy the farm, did not alter the rule, or its application to the facts of this case, or make Dunn the procuring cause of the sale. The sale would have been made precisely as it was made, if Hearne had never put the farm in Dunn's hands for sale. There being no contradiction as to the controlling fact that Dunn never told Watson that he proposed to sell him the Hearne farm, and that Watson never knew that Dunn expected to sell him the Hearne farm, it must necessarily follow that Dunn was not the procuring cause of

the sale, and that appellant's motion for a peremptory instruction should have prevailed.

Under this view of the case, it becomes unnecessary to pass upon the instructions to the jury.

Judgment reversed for further proceedings consistent with this opinion.