## Honaker v. Owens and Cowan, et al.

(Decided May 30, 1924.)

### Appeal from Lincoln Circuit Court.

1.  Brokers—Trial—Requested Instruction Held Properly Refused but Duty Remained on Court to Give Proper Instruction.—In action for 2 per cent. commissions for furnishing purchaser, wherein plaintiffs claimed agreement to pay 2 per cent. commission if land sold for less than $210.00 per acre, and defendant contended plaintiffs were entitled only to excess over $210.00 per acre, court properly refused to instruct that, if they believed that, when defendant sold farm at $205.00, purchaser had then abandoned idea of purchasing it for over $210.00, they should find for defendant, but it was duty of court to give a correct instruction on that subject.

2.  Brokers—Evidence Held to Justify Finding Purchaser at Time of Sale had Abandoned all Negotiations with Broker.—In action by brokers for commission, evidence held to justify finding that at time defendant sold farm all negotiations between plaintiffs and purchaser had been abandoned.

3.  Brokers—After Negotiations Between Purchaser and Brokers Abandoned, Owner May Sell Land Without Liability for Commissions.—After negotiations between brokers and purchaser have been abandoned by both parties, landowner then has right to

enter into negotiations with purchaser and sell land without incurring liability to brokers.

K. S. ALCORN for appellant.

J. S. OWSLEY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

In the fall of 1919 appellees, real estate agents, entered into a contract with appellant, the owner of a farm of 130 acres, by which it was agreed that if the brokers should sell his farm at a price that would net the owner $210.00 per acre they should have as their commission the excess of the sale price.

Thereafter, as alleged in the petition and denied in the answer, they entered into a further agreement by the terms of which the brokers were to receive two per cent. of the purchase price at which the farm might be sold if the same should be sold for less than $210.00 per acre, and such price should be accepted by the owner.

This action is by the brokers against the landowner on the latter cause of action, it being alleged that defendant, on information furnished by plaintiffs and by their assistance and procurement, sold the same himself to Braden & Chambers at the price of $205.00 per acre.

The answer is a specific denial of every allegation in the petition, except the original contract by which plaintiffs were to have as their commission all of the purchase price over and above the $210.00 per acre.

On the trial it was shown that some time in December, 1919, the real estate brokers received information from a business associate in an adjoining county there were two gentlemen from Tennessee who desired to buy farm property, and that he would bring them to see appellees on the next day. Accordingly an appointment was made over the telephone by which the parties were to meet the appellees at Honaker's home on the next morning with a view to showing the customers that farm. The parties met there according to agreement and saw Honaker, but he, not feeling well, did not go over the farm with the others, but left it to the brokers to show it to the prospective purchasers.

They looked over the farm and apparently were pleased with it, but Owens, one of the brokers, priced it

to the prospective purchasers at $225.00 per acre and notified them that was the least that would buy it. The purchaser on the contrary offered $200.00 per acre, which offer was declined by the brokers.

In this situation the parties left the Honaker farm and looked at two other farms in that locality in the hands of the same brokers for sale, there having been, so far as we gather from the evidence, no further consideration given to the sale of the Honaker farm.

The Tennessee men knew a man by the name of Bright, who lived in the community upon a farm adjoining that of Honaker, and that afternoon they went to the home of Bright and remained there overnight with him. While at Bright's place that night the purchase of the Honaker farm was discussed, and when it was disclosed to Bright that the brokers had priced the Honaker farm at $225.00 per acre, Bright, a neighbor of Honaker, informed the prospective purchasers that his information was that Honaker was pricing the farm at considerably less than that, whereupon either Bright or Chambers called up Honaker over the telephone. In that conversation appellant was told that the Tennessee people would give him $200.00 an acre for it and he declined to accept it; but the next morning either Bright or Chambers called him again and he was informed that the Tennessee men were preparing to go to Boyle county to look at some property, and in this conversation appellant was given to understand that the Tennessee men would like to look over the property again at $205.00 per acre, and as a result of this the parties again went to the home of Honaker and again looked over his property, resulting in a tentative agreement by which it was sold to them at the price of $205.00 per acre. Later in the same day the parties met at Hustonsville and this agreement was reduced to writing.

The evidence on the issue whether appellees were promised any compensation if the farm should be sold for less than $210.00 per acre is very conflicting. It is testified by Owens and his son that, on the day the Tennessee men first looked at the Honaker farm, or on the next day when they looked at it a second time in accordance with the agreement made over the phone, while the parties were at Honaker's place, Honaker agreed that if the farm should be sold at a price less than $210.00 per acre, which he would be willing to accept, then they should receive their commission. On the contrary

Honaker specifically denies any such conversation at that or any other time, and says their only right to commission was in the event they should sell same for more than $210.00 per acre.

It is stated by Chambers, one of the purchasers, that the brokers never priced the Honaker farm at less than $225.00 per acre and distinctly gave them to understand it could be bought for no less, and that they being unwilling to give that price and the brokers unwilling to accept a less price he then went with the parties to look at other farms, and never intended to further follow up the negotiations about the Honaker farm until he ascertained while at Bright's house that the farm could probably be bought for $210.00 per acre or less.

The evidence shows that the brokers did produce the purchasers and took them to and showed them the Honaker farm, but it also shows that they never undertook to sell the Honaker farm to them except under the contract by which they were to receive as commission the excess over $210.00 per acre. They expressly told Chambers it could not be bought for less, and the inference to be drawn from the $200.00 offer of Chambers and the fixed price of $225.00 made by the brokers is that, when the parties then went to look at other farms, and thereafter went to stay all night with their friend with the express determination to go into another county the following day to look at still other farms, the negotiations as to the Honaker farm were apparently abandoned by all parties. This is further indicated by the disparity between the price asked by the brokers and the offer made by the purchasers. Not only so, it is expressly testified by Chambers that he did not expect to again look at the Honaker farm with a view to its purchase, until he ascertained at Bright's home that it could probably be bought for $210.00 per acre or less.

The court gave two instructions. In the first a recovery for the plaintiffs was authorized if the jury should believe the parties entered into an agreement that if the brokers furnished a buyer for Honaker's farm and it was sold for under $210.00 per acre, they should find for the plaintiffs.

In the second instruction they were told that if they believed plaintiffs undertook to sell the farm with the understanding they should have as commission all it brought over $210.00 an acre, and that this was the only

contract between the parties, they should find for the defendant.

The defendant offered an instruction in substance that if they believed when Honaker sold the farm to Chambers that Chambers had then abandoned the idea of purchasing it for over $210.00 per acre they should find for defendant, but the court declined to give this instruction.

The court properly refused the instruction on abandonment as offered by defendant, but the question remains was it not then the duty of the court, after this erroneous instruction on that theory had been offered, to give a correct one on that subject?

The facts and circumstances in evidence would have justified the jury in believing that at the time Honaker sold his farm to Chambers all negotiations between the brokers and Chambers had been abandoned. There was a difference between them at that time of $25.00 per acre, they had left the Honaker farm and had actually looked at two other farms with a view to their purchase, and the prospective purchasers had expressed their determination to go to another locality in search of a farm which they might buy at a satisfactory price.

This situation and this evidence authorized an instruction to the effect that, if at the time of the sale by Honaker to Chambers the negotiations between the brokers and Chambers had been abandoned by both parties and were at an end, Honaker then had a right himself to enter into negotiations with Chambers and sell him his farm without incurring liability to the brokers.

In the case of Stedman v. Richardson, 100 Ky. 79, the brokers found a purchaser and had attempted to sell the property to him, but had failed to do so within the period fixed by their contract with the owner, or within a reasonable time. Thereafter in good faith the owner withdrew the property from the hands of the brokers, which he had a right to do, and the day after it was so withdrawn it was sold by the owner to the purchaser produced by the brokers, and the court held that the withdrawal being in good faith and without purpose to prevent the brokers from earning their commission they were not entitled to recover, and the same ruling was made in the case of Tracy v. Gilman, 161 Ky. 513.

Those two cases are unlike this in that there is no claim here that the property had been withdrawn by the

owner from the control of the brokers at the time of the sale; but as heretofore set forth there was such a state of case at the time of the sale as authorized the owner in the exercise of good faith to believe that his brokers had abandoned their efforts to sell to the purchaser they had produced, and which authorized him to enter into negotiations with such purchaser.

The rule on the question of abandonment by brokers appears to be that if after they have produced the purchaser and have failed to effect a sale to him, and the negotiations are abandoned or broken off, he is not entitled to his commissions if the owner thereafter enters into negotiations with the same purchaser and effects a sale.

The rule is accurately stated in the case of Chaffee v. Widman, 48 Col. 34 (139 A. S. R. 220). There the court said:

> "When a broker opens negotiations but fails to bring the prospective purchaser and owner together, and they are abandoned without fault of the owner, and the latter subsequently sells to the same party, without further effort on the part of the broker, the owner is not liable to the broker for commissions."

There will be found appended to this opinion in the 139 A. S. R. an extended note with the citation of numerous authorities upholding that text.

The owner is not denied the right to bring about a sale in good faith to the customer produced by the broker, if the latter has failed to bring about such sale, and he and the customer have abandoned further negotiations or efforts. The mere abandonment by the customer alone, however, is insufficient to justify the owner to make a sale that will defeat the broker in the collection of his compensation unless the broker likewise has abandoned his efforts to make such a sale to the customer.

The plaintiffs claim to have had two agreements with defendant about compensation, one alternative to the other. By one they were to have as compensation all they should sell the farm for above a certain price per acre net to the owner, and by the other they were to have a two per cent. commission even though they should sell the farm for less than the minimum net price fixed by the owner, if the latter agreed to any such price.

The evidence is convincing that plaintiffs made no effort whatever to sell to Chambers except under the terms of their original contract with defendant, and never at any time showed any disposition to make an effort to earn any commission under the supplemental contract as claimed by them. These facts emphasize the necessity for giving the abandonment instruction in this case.

We are of opinion, therefore, that when defendant offered an erroneous instruction on the subject of abandonment, there being sufficient evidence to justify an instruction on that subject, it was the duty of the court to give a correct instruction as herein indicated.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.