## C. Robert Peter & Co. v. Fix.

(Decided June 22, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Brokers.—Real estate broker held to have abandoned efforts to secure purchaser and not entitled to commission on subsequent purchase by prospect produced by him.

2. Brokers.—Real estate broker's authority held to have expired before purchase, thereby precluding recovery of commissions.

3. Brokers.—If owner of property in good faith withdraws it from broker pursuant to right to do so, and afterwards sells it, even to prospect discovered and furnished by the broker, he incurs no liability to the latter.

MARK BEAUCHAMP for appellant.

JOSEPH J. HANCOCK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, C. Robert Peter & Co., a corporation, is engaged in the real estate business in Louisville, including that of brokers in effecting sales of real property. The appellee and defendant below, Dr. C. C. Fix, owned a building at 1060 South Eighteenth street, which on or about January 14, 1927, he sold to Dr. J. W. Craddock for the sum of $10,000 and other considerations not necessary to now mention. This action was filed by plaintiff against defendant in the Jefferson circuit court to recover against him a judgment for $500 as alleged commissions due plaintiff from defendant for services rendered to him by it in making the sale to Dr. Craddock, and as grounds for the recovery it was alleged in the petition that defendant had placed his property in the hands of plaintiff for sale with the agreement to pay the commissions sued for. The answer was a denial of all material averments of the petition, and at the close of plaintiff's testimony the court sustained defendant's motion for a peremptory instruction in his favor, and from the judgment based upon such directed verdict plaintiff prosecutes this appeal.

The substance of the testimony heard at the trial was: That some time in the latter part of December, 1926, Dr. Craddock and his wife went to the office of plaintiff in Louisville for the purpose of consulting it with reference to a piece of property on West Market street owned by Dr. Moser and which Craddock contemplated purchasing if satisfactory terms could be made. Both it and the property of the defendant, Dr. Fix, had been recommended to Craddock as suitable for a location for the practice of his profession of a physician, he theretofore having resided in Munfordville but was preparing to move to Louisville. Taking the testimony of plaintiff's vice president for the purpose of testing the correctness of the court's ruling in giving the peremptory instruction, he testified that at the time his company did not have the property of defendant listed for sale, but that Craddock inquired of him about the value of the Moser property, and some other matters connected therewith, and that some time during the conversation witness suggested that Dr. Fix had recently purchased property in a different part of the city and probably his property on Eighteenth street could be purchased and would be acceptable to Craddock; that there-

upon he called Dr. Fix over the telephone, and in the presence of Craddock, and arranged for a meeting between those two, and in which defendant stated to him, in substance, that if a sale was effected "he would take care of me as an agent." Craddock then left and went back to his home in Munfordville. But prior to that time he had discussed the matter of his purchasing property in the city with his friend, Dr. Casper, who had an office in the Starks building in the city, as did also his friend Dr. Hester.

On January 5, plaintiff sent its representative to Dr. Fix and obtained from him a written proposition to sell his property for a total consideration of $12,500, $6,500 of which was to be cash and $6,000 was to be the assumption of a mortgage on the property. Certain provisions were contained therein with reference to the payment of taxes and when possession was to be given. There was also inserted an agreement to pay defendant commissions for the sale if effected thereunder, and there was then appended this sentence: "This proposition is good until 6 p. m. January 9, 1927." There was printed thereon a blank acceptance, but it was never signed by any one, nor was that proposition ever presented to Dr. Craddock. Neither did defendant through any of its officers or agents ever write or telephone Craddock; but plaintiff's vice president testified that he did communicate it to Dr. Casper, although we do not find anything in the record to show that any such instructions were ever given by Craddock.

Either just before or just after the conversation in defendant's office, Dr. Craddock and wife inspected defendant's property, and shortly thereafter they met and discussed the sale, in which defendant declined to accept any price for his property less than $12,000, which Craddock declined to give. Thereafter Craddock instructed his friend Dr. Hester to offer defendant $10,000, which was declined, and Craddock thereupon concluded that negotiations were at an end and he rented other property for the purpose of moving to the city. On the 14th or 15th of January Dr. Hester called him at Munfordville and stated that defendant would take $10,000 if Craddock would refer to him (defendant), for the succeeding five years, all major surgical cases that might come within Craddock's practice, and that proposition was accepted, but no deed was made until along about the 1st of February. The record discloses without contradiction

that the defendant's property had been recommended to Craddock before he made his visit to the office of plaintiff, and that thereafter the latter did nothing up until January 5, when it procured from defendant the written but unaccepted proposition above referred to, and that it did nothing thereafter to procure an acceptance by Craddock except the conversation with Dr. Casper.

Under such circumstances we are convinced that the negotiations, so far as plaintiff was concerned, were abandoned by it, and we are furthermore of the opinion that under the above narrated facts plaintiff's authority ceased on January 9, 1927, and, the sale having been effected thereafter, it has no legal right to claim the commissions sued for. Those propositions were so determined in the cases of Stedman & Bowman v. Richardson, 100 Ky. 79, 37 S. W. 259, 18 Ky. Law Rep. 567; Treacy v. Gilman, 161 Ky. 513, 171 S. W. 153; Honaker v. Owens & Cowan, 204 Ky. 382, 264 S. W. 842, and Al Koch Real Estate Co. v Durrett, 214 Ky. 162, 282 S. W. 1079. Each of those opinions do not deal with both of the propositions above stated, but they are each determined in one or more of them in accordance with the above expressed conclusions. It will be found in the Honaker and perhaps some others of those opinions that if the broker abandons negotiations and the owner of the property afterwards in good faith resumes the negotiations, followed by a sale of the property, the agent is not entitled to commissions. Furthermore, that if the owner in good faith withdraws the property pursuant to a right to do so and afterwards sells it, even to a prospect discovered and furnished by the agent, he incurs no liability to the latter. Plaintiff, as we have seen in this case, in effect if not actually, abandoned negotiations to complete the sale to Craddock, notwithstanding it knew that the proposition of defendant would expire at 6 p. m. January 9, 1927. Because of that fact defendant had the right to not only treat the negotiations as abandoned, but to consider the proposition at an end because of the time limit. Under such circumstances the owner of the property might possibly be liable for the commissions if he, by his fault and with the intention and purpose to circumvent the agent's right to the commission, deferred the sale until after that time; but no such facts appear in this record.

Plaintiff cites and relies on the case of Stuart-McKnight's Co. v. Monroe, 222 Ky. 602, 1 S. W. (2d) 1054, as holding that it was not bound by the time limit con-

tained in the unaccepted written proposition given by defendant herein; but the facts of that case were materially different from those found in this one. The writing in that case was not relied on as a "contract of listing," but only as evidencing the contract of sale by the landowner to his vendee. The prior oral listing of the land there involved with the agent therein was a general one, and the involved writing was not a listing of the land with the agent, but which latter was true as to the writing in this case. On the contrary, the writing in the Stuart-McKnight case was for the purpose, we repeat, of evidencing the sale to the individual purchaser. The original verbal listing over the telephone, if it occurred as plaintiff's vice president testified, was a special one and later followed by its reduction to writing and which writing limited it to January 9, following, at 6 p. m. If, however, we were mistaken as to the difference between the effect of the writings in the two cases we still have a case where the negotiations were abandoned by plaintiff under the holding in the Honaker and some of the other cases, supra, whereby it lost its right to claim the commissions sued for.

Wherefore, the judgment is affirmed.