## Smith v. Treacy.

June 15, 1943.

682

Keenon & Odear, and Neville C. Fisher, and D. D. Cline for appellant.

Bradley & Blanton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellee was a licensed real estate broker in Lex-

ington; Wyatt was his agent. Appellant owned a 220 acre farm in Bourbon County. In October, 1938, according to Wyatt, at the sale of another farm Smith agreed that he would sell at $225 per acre. Wyatt told him the commission on sales outside Fayette County would be 5%, and the farm was listed. Wyatt learned that Davis was in search of a farm and contacted him in January, 1939. He and Davis visited and looked over the farm, and Davis proposed to pay $200 per acre. Smith was then in Florida and Treacy wired the proposal; appellant received the wire but was not interested. Wyatt later phoned him the offer but he declined.

Smith returned in March of 1939. Wyatt says he and Davis went to the farm and talked to Smith, who reiterated his $225 proposal; Davis made no offer, Smith says he had no recollections of this visit. Later Davis proposed to Wyatt that he would pay $45,000. Smith rejected the offer, Davis later raising his offer by $1,000; this was rejected. Davis, later in the summer, proposed to Wyatt that he would pay $47,500, the $500 to go to the broker in lieu of commission. This was renewed in Treacy's office. Treacy declined, but suggested that if the deal be closed "today," he would accept a 3% commission. This apparently disturbed Smith, and the meeting broke up.

Prior to this meeting Davis had made the proposal to Wyatt, who communicated it to Treacy. Wyatt said that at one of the meetings with Davis, who was urging the $500 bonus, Davis said that he was going to advise Smith to sell "under the hammer." Treacy says Davis told him the same thing. Davis stated that he had offered to Smith, directly, $47,000 for the farm and he declined.

On August 18, 1939, there appeared in two Lexington papers an advertisement of the sale of appellant's farm on August 26. It contained no reservation of possession, or mention of tenancy. At the sale Davis became the purchaser at $220.25 per acre, an increase over the last offer made by Davis, and $4.75 per acre less than Smith's price. After the sale Treacy demanded his commission. Smith declined payment and suit followed, Treacy alleging the contract, the bringing together of seller and buyer, services performed, asking for judgment for 5% commission.

In answer appellant denied the allegations of the

petition and affirmatively pleaded the offer by Davis and his rejection; that being unable to effect a private sale at his price he advertised and sold. It was pleaded that in the latter part of 1938 he agreed for Wyatt to sell the farm at his price, if the sale could be consummated before a contemplated trip to Florida; he contended that his contract ended with his departure. These allegations were denied by reply, which affirmatively pleaded that during negotiations and the disagreement about bonus or commission, Smith and Davis "agreed that said farm would be put up at public sale, as a device for evading the payment of commission, and that the public sale was not a bona fide sale." Rejoinder closed the issue.

After proof the cause was submitted to a jury, and verdict was rendered in favor of appellee for 5% of the total sales price. The court overruled motion for a new trial and entered judgment according to the verdict. The grounds urged in support of the motion were more than ten in number. On appeal grounds not so numerous will be noted after recital of proof on what seems to be the questions of fact in issue, i. e., whether or not the public sale was in good faith, following a good faith withdrawal of the listing, and it may be noted at this point that determination does not depend upon whether or not Smith and Davis agreed that there should be a public sale, though if the fact be true it would enter largely in consideration of the question of Smith's good faith, and to this extent the testimony on this point was competent.

Smith's pleading and proof clearly indicate an understanding, continuing at least until the meeting in July. Wyatt testifies, and Davis agrees, that after the $47,000 offer he had proposed to add $500 to his bid, to be in lieu of commission. During some of the conferences with Smith soon after his return from Florida, he had told Wyatt that he couldn't sell because he had rented the farm for the year. This objection was waived, as far as the record shows, when Davis purchased, and was not interposed when the trade with Davis fell through at the meeting. Smith's version of what there happened, is that he casually met Treacy in Lexington in July and was informed by him that Davis was ready to trade. Smith asked if Davis had come to his terms, and Treacy said "he is willing to pay your price."

Smith later met Davis in the office. He renewed his $225 per acre offer and Davis declined. Smith then became angered with Treacy because he had been assured that Davis had come to terms. During the colloquy Treacy, anxious to get the two together, proposed that Davis and Smith each pay $500, and close the deal. This peeved Smith, who said he would never pay one cent commission unless he received his price, and informed the brokers that they should not bother him any more.

Wyatt testifies that prior to the meeting he met Davis and Smith in Lexington and Davis asked Wyatt if he was going to accept the $500 proposition. Wyatt suggested that this was for Treacy to determine. Davis then said that unless the offer was accepted he would advise Smith to sell under the hammer, and Smith said "that is exactly what I will do." Smith and Davis deny the conversation. Smith denied also that he had heard of the $500 proposal, although on cross examination he admits that Davis had told him of it. Treacy said that after the sale when he demanded his fee, Smith told him that he should have taken the Davis offer of $500.

On cross-examination Smith admitted that he had expected to pay a commission had the deal been closed at his price before he went to Florida, and that Wyatt understood that. Wyatt denies this. He also admitted that Wyatt had mentioned to him the Davis bonus proposition and Smith replied that "they would not get a thing, since the farm was not for sale at any price," admitting also that his farm had sold slightly under his rejected figure; he said that he had no intention of withdrawing the sale (public) since he was "pretty sure of my ground because I knew there were fellows that would pay the price." Appellant named four or five persons who looked over the farm prior to the sale. On the day of the sale, the bidders, according to Smith, were a Mr. Bell, Toohey, one of his tenants, and Mr. Davis. The tenant bid $216.50; Bell bid $220, and Davis raised the bid 25c per acre. The tenant said that he was a by-bidder for Smith up to $215.

Davis to a great extent corroborates Smith. He denied that he made any suggestion to Smith about a public sale, or that Smith made such suggestion to him, although Smith had told him that he proposed to sell at auction, a matter which he did not communicate to Treacy. Davis had advised against such procedure, and

was surprised when he saw the sale notice. Just what answer was made by him to a question on cross-examination means, we do not gather, but it had some significance. He was asked, following his statement that he had offered Smith $47,000, "But anyhow he agreed with you that whoever made the last bid, you would get the property regardless of the bids, didn't he?" and his reply was "Yes, Sir."

In considering the law question, we dismiss from discussion the contention of appellant that the limitation of time for appellee to sell the property was confined to the period between October and the trip to Florida, because there is no proof to the effect that Treacy was in anywise notified of withdrawal.

Appellant relies upon the sound rule in Stedman v. Richardson, 100 Ky. 79, 37 S. W. 259, to the effect that where real estate is placed in the hands of a broker for sale, and he finds a prospective purchaser, but after negotiations have failed, the owner may in good faith, and when no negotiations are pending, withdraw the property, and without intention to prevent payment of a commission, sells the same to the purchaser to whom the agent had failed to sell, the broker is not entitled to a commission. The facts are not fully stated in the opinion, but we gather from it that the lower court found that there was upon failure to close the deal a good faith withdrawal, when no negotiations were pending. We assumed that under the terms of the contract, there was a limitation as to time in which to sell, and failure had occurred within the time limit. The rule is also announced in Peter & Co. v. Fix, 225 Ky. 198, 7 S. W. (2d) 1040, where we found from facts that the sale was made in good faith after abandonment of efforts by the broker, and in Honaker v. Owens & Cowan, 204 Ky. 382, 264 S. W. 842, wherein we found that both parties had abandoned effort. There is proof here that Treacy and Smith had conversations just prior to the sale, and further that Treacy had made further effort up to a few days before the sale.

An applicable rule is stated thuswise in Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153, 155:

"We think that, where the owner of property puts it in the hands of a real estate agent for sale, and the agent finds a purchaser, but the contemplated

purchaser and the owner cannot agree on terms, and the owner, with a view of avoiding the agent's commission, withdraws the property from the hands of the agent without his consent and breaks off the negotiations with the purchaser, but thereafter sells the property to the purchaser brought to his attention by the agent, or to a third person who he knows is acting for him, the agent should be treated as the procuring cause of the sale and entitled to his commission." Citing cases.

Counsel's contention that appellant was entitled to a peremptory instruction at any stage of the case, is not well taken. There was sufficient proof to take the case to the jury on every issue, though on what appellant chooses to call the "conspiracy" between Smith and Davis it is sharply conflicting. One point stressed is that the court overruled objections to certain questions as to conversations between Davis, Wyatt and Treacy, not in the presence of Smith. We assume these objections (and we find very few) related to the offer of compromise, and the plan to sell the farm at auction.

Counsel contends that upon his motion the court should have discharged the jury, because some of the evidence was admitted on the avowal of counsel for appellee that the evidence would be made competent by proof of a conspiracy. The difficulty here is that while there were one or two objections to these statements, the witnesses were permitted to reiterate without objection. The motion to discharge the jury fails to point out the objectionable questions or the avowal. Aside from this, as far as this complaint goes, we think the evidence was competent to show actions upon Smith's part to evade the payment of a commission. Whether Davis had aught to do with such an effort by act or word had naught to do with the rights of appellee or the liability of Smith, if he did not in good faith sell after a good faith withdrawal.

As to testimony relating to compromise, put into motion by Davis, and known to Smith, we fail to find timely objections to the question asked or answer given on this phase of the case. The general statement made by counsel correctly states the rule to be that compromises or efforts to compromise are ordinarily inadmissible in proof. Powers' Adm'r v. Wiley, 241 Ky. 645, 44 S. W. (2d) 591; Whitney v. Penick, 281 Ky. 474, 136 S. W. (2d) 570; Smith v. Sanders, 293 Ky. 6, 168

S. W. (2d) 359, and Hurst v. Williams, Ky., 102 S. W. 1176, in these cases the effort was to settle or a compromise in pending or imminent litigation between claimant and the person liable, or an attempt to prove a compromise by one injured person, in the pending action of another. Here the movement was on the part of Davis, undoubtedly anxious to purchase. Smith was not prejudiced because he vehemently declined to listen to any such proposal, and it is clear that he had not made any offer, but was at all times denying any liability. This evidence was competent to show that at that meeting negotiations were pending for the sale by Treacy, using his effort to bring the parties together, at which time there having been no sale, no commission was due.

The court instructed the jury substantially (No. F) that if they believed from the evidence plaintiff was employed to effect a sale of the farm, or to procure a purchaser at a price acceptable to the seller, within the time allowed, if they believed there was a limit, or within a reasonable time if no limit, and that upon plaintiff's failure so to do, the defendant in good faith sold the farm at a fair public sale, the plaintiff is not entitled to recover, although you may believe that the sale was to the one whom plaintiff had theretofore introduced to defendant, "you should find for defendant."

Appellant admits that the instruction substantially embodied the law, but should not have been given because "there was absolutely no evidence whatsoever of bad faith on the part of defendant." Good faith is ordinarily presumed, and the presumption, like in case of fraud, prevails until the contrary is shown, and like a charge of fraud may be shown by circumstances, and actions of the parties. The want of good faith is not a visible or tangible fact. It is a state or condition of mind which can only be judged of by tokens, signs and circumstances. Omitting from the case all testimony on that phase of the case, save that of Smith and Davis, or perhaps Smith alone, there were circumstances and movements which would justify the jury in believing the public sale was not in the best of faith, and this regardless of any question of conspiracy.

Counsel contends that appellant was entitled to a peremptory, because appellee failed to deny the plea in answer "defendant states that it was understood and agreed that no commission should be paid unless plain-

tiff procured a purchaser at $225 per acre, or unless said sale was consummated before defendant started on said trip."

It may be noted that in so much of the answer as controverted the allegations of the petition, appellant denied absolutely any contract with appellee. The allegations of the answer merely constituted an attempt to traverse affirmatively the allegations of the petition. Columbia Life Ins. Co. v. Tousey, 152 Ky. 447, 153 S. W. 767. Reference to the reply will show that it denied that the sale was to be effective prior to the trip to Flor·ida, and affirmatively alleged that it was agreed that plaintiff was to have "a commission as set out in plaintiff's petition," which plead that appellee was to receive a 5% commission if a sale were brought about by his efforts. Aside from this, appellant denied the contract which Wyatt claims was made in October, but said that in December he agreed to let Wyatt sell at $225 per acre, but "not a word was said about commission; it was never mentioned in any manner, shape or form."

Another contention is that the judgment should be reversed because the court failed to instruct the jury that if they found for plaintiff, they should find not to exceed 3% commission. It is argued that the pleadings and proof raised that issue. We fail to find such issue raised by the pleadings. The only proof on the subject is to the effect that the commission was 5% on sales of property outside of Fayette County. The only mention of 3% commission was when Treacy, at Davis' instance, offered to reduce in order to close the deal on the day when parties were in his office. Again, notwithstanding appellant tendered eight instructions, he failed to offer one on this claimed issue.

The final contention is that in giving instruction No. 1, which in itself is not subjected to criticism, except the statement that it really amounted to a peremptory for plaintiff, the court failed to add the words "unless you so believe, you will find for the defendant." Further, that though the converse was attempted to be given by instruction No. 2, it was not so complete as to include certain issues set out in No. 1. A reading of both instructions together shows that the court did not include in the converse instruction reference to the 5% commission. This was immaterial. It was a matter of 5% commission or none at all, and this issue was fairly pre-

sented to the jury by instruction "F," given substantially as offered by defendant in instruction "H."

On the whole case it appears to us that there was a fair and impartial trial, free from prejudicial error, with issues fairly presented, and according to our view the jury correctly decided the issues.

Judgment affirmed.