## Merten v. Vogt et al.

February 13, 1948.

William H. Field, Judge.

Harry L. Hargadon and John L. Bennett, Jr. for appellant.

Lawrence S. Leopold for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

On March 3, 1943, William J. Merten, real estate broker, obtained an option from Ben Vogt, trustee, to sell property known as the Thierman Apartments. The

contract for option was one prepared by Merten and had in it the following:

"I hereby list my property with you for sale and grant you the exclusive right for 3 months from the date hereof and for such additional time thereafter until you receive written notice terminating same."

Appellee claims that he signed the contract without reading it, being under the impression that it was a regular uniform sales agency contract of the Louisville Real Estate Board, which does not contain the language "and for such additional time thereafter until you receive written notice terminating same."

He also contends that at the time the option was obtained Merten stated that he had "a man that had the money and was interested in buying real estate." He also states that soon after obtaining the option Merten advertised the Thierman Apartments for sale and that on March 26 appellee wrote Merten a letter reprimanding him for advertising the property and calling to his attention his statement that he had "a man that had the money and was interested in buying real estate." Anyway, Merten apparently contacted a Dr. Crawford from Murray, Kentucky, showed him the property, and discussed the matter of sale with him. This happened sometime in March, 1943.

On April 19, 1943, Dr. Crawford wrote Mr. Vogt a letter asking him for all information about the apartments. The contract option price was $75,000. It appears that Dr. Crawford offered $65,000 for the property. This offer was made known to Vogt, which he would not consider. Merten testified that he then tried to get Dr. Crawford to offer $70,000 but such offer was never made.

On April 10, 1943, Merten addressed a letter to Dr. Crawford concerning the property, which Dr. Crawford did not even answer. On July 6, 1943, Merten addressed another letter to Dr. Crawford in which he said:

"Have been wondering why you quit on the Thierman Apartments and if you could be interested in several other apartments we have here.

"Would appreciate hearing from you and would

also appreciate your contacting me if you are at any time in our territory.

"Kindest personal regards, beg to remain,

"Yours very truly,

"William J. Merten."

Merten testified that he had made several long distance calls to Dr. Crawford but it appears that this letter of July 6 was the last thing that was done toward the sale of the property. In July 1944, just about a year later, it appears that while Dr. Crawford was in Louisville attending a dental meeting he walked out by the Thierman Apartments where he met a tenant, from whom he sought information concerning the apartment. This tenant informed the doctor that the manager would be there soon and he could discuss the matter with him. Dr. Crawford waited for and talked with this manager, a Mr. Tierney, who also was a real estate broker. It appears that the manager, Mr. Tierney, and his wife, Mrs. Flora K. Tierney, operated as Long Realty Company. Mrs. Tierney then followed up the matter with Dr. Crawford and obtained from him an offer of $70,-000 for the apartments. This offer was accepted, the deal was consummated, and the commission was paid to the Tierneys. Merten brings this action.

The court, after hearing the evidence, peremptorily instructed the jury to find in favor of the defendant, predicating his decision solely upon the assumption that the plaintiff had abandoned the contract relied upon as constituting his cause of action.

Appellant insists first that the provisions of the contract above were self evident and could not be ignored at the discretion of appellee. In support of his position appellant cites numerous cases, all of which, in the absence of other challenging matters, are well taken as affecting the particular question raised above. We are not inclined to attach merit to the fact that the contract as signed by Mr. Vogt was different from the regular Louisville Real Estate Board contract in that it contained the additional statement "and for such additional time thereafter until you receive written notice terminating same." Failure to read the contract,

in the absence of fraudulent acts on the part of the other, certainly would be no excuse, and the very fact that the contract could run for any length of time beyond the 3 months, subject to action upon the part of Mr. Vogt, does not make the contract as repulsive as intimated by appellee.

This action must be based upon the question of whether or not there was an abandonment of the contract. Appellant takes the position that such abandonment must be accompanied by some overt act indicating such, and that mere lapse of time or nonuser is insufficient. Appellant cites cases from foreign jurisdictions in support of his view on the question of abandonment. The principles as cited therein are generally those adopted and held in this jurisdiction. Certainly it could not be persuasively argued that the appellant could enter into the contract as stated above and then sit quietly by for an indefinite period of time, do nothing about the sale of the property, and then expect to enforce his contract. True, he contacted Dr. Crawford; showed him the property in March or April of 1943; was unable to consummate the sale, and in July of that year wrote him a letter inquiring why he had quit on the Thierman Apartments, and in the same letter inquired if Dr. Crawford would be interested in other apartments that Merten had. After July 6, 1943, the date the letter was addressed, nothing was done in an effort to sell the property to Dr. Crawford, or to anyone else.

In 8 Am. Jur., Brokers, Section 144, the law is generally stated thus:

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed."

A somewhat similar situation arose in Honaker v.

Owens & Cowan, 204 Ky. 382, 264 S. W. 842, 844, wherein we said:

"The rule on the question of abandonment by brokers appears to be that if, after they have produced the purchaser and have failed to effect a sale to him, and the negotiations are abandoned or broken off, he is not entitled to his commissions, if the owner thereafter enters into negotiations with the same purchaser and effects a sale. * * *

"The owner is not denied the right to bring about a sale in good faith to the customer produced by the broker, if the latter has failed to bring about such sale, and he and the customer have abandoned further negotiations or efforts."

See also C. Robert Peter & Company v. Fix, 225 Ky. 198, 7 S. W. 2d 1040, wherein we held in substance that notwithstanding the fact that the purchaser was first introduced to the seller by the broker, yet the evidence shows abandonment by both parties. The broker was not entitled to a commission since the sale was consummated after abandonment of negotiations by the purchaser and broker.

Also in the case of Mattingly-Lusky Realty Co. v. Camper, 228 Ky. 407, 15 S. W. 2d 240, 241, we said:

"The inaction of the agents during the lapse of time intervening between their last efforts to effect a sale or exchange and the consummation of the trade between Mrs. Arnold and Mr. Camper on a different basis—a period of five months—clearly manifests a purpose and intention on their part to abandon the employment. Consequently, the submission of the case to the jury was not required."

Appellant's inaction commenced in July 1943 and continued for a year, during which time no further negotiations or efforts were made to consummate a sale. Such inaction we conclude constitutes entire abandonment of employment.

Wherefore, the judgment is affirmed.