## Miller v. Woodward.

(Decided June 3, 1930.)

JOHN J. HOWE for appellant.

O. M. ROGERS and ROGERS & ROGERS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

W. W. Woodward brought this suit against George Miller to recover a real estate commission of $500. From a verdict and judgment in favor of Woodward, Miller appeals.

Plaintiff's evidence is as follows: Miller owned a 100-acre farm in Boone county which he desired to sell. During the Christmas holidays of 1927 Miller had some conversation with Woodward, who was in the real estate business, in regard to the sale of the farm. On December 28, John Goodpastor, a real estate broker, who sometimes worked in conjunction with Woodward, appeared at Woodward's place of business accompanied by Miss Mary A. Beerman, who desired to purchase a farm. Thereupon Woodward got in touch with Miller and told him that he had a prospective purchaser. Miller then executed a contract giving Woodward exclusive right to sell the farm for a period of 30 days. In the meantime Miss Beerman accompanied Goodpastor to the Miller farm and went through the house and examined the premises. Some time later Woodward appeared with the contract. Though Miss Beerman expressed herself as well pleased with the farm she declined to sign the contract, saying she desired to consult her brother-in-law, Fred Morris. Sam Blackburn, then a tenant on the farm, saw Miller three or four days later and told him what Miss Beerman had said. On January 16, 1928, Miller told M. H. Jones that he had sold his farm, but did not want anything said about it. About the middle of January Miller had a conversation with a Mr. Delahonty, also a real estate agent, during which he said that he made a mistake in listing the farm with Woodward for 30 days and ought not to pay any commission, for the reason that he had sold the place to Morris at the Florence fair. He added that Morris did not have the money to pay down on the bargain, but that "the women you have got hold of have got the dough." A few days after she was shown the farm, Miss Beerman got in touch with Fred Morris, her brother-in-law, and they concluded to buy the farm, if they could get it at the price stated in the contract, and that is the price they finally paid. Miss Beerman then called on Miller and began negotiations with him. On February 18, 1928, the property was conveyed to her and Fred Morris for the agreed consideration of $10,500, the price fixed in the contract between

Miller and Woodward. The attorney who examined the title about the 15th of February stated that he had been employed about two weeks before that.

While on the stand Miller admitted having heard of Miss Beerman, but denied knowing her or having information that she was the purchaser furnished by Woodward. He also denied the alleged conversation between him and John Delahonty and Melvin Jones. Though he finally denied that Mr. Blackburn told him that Mr. Goodpastor had been out there with Miss Beerman, his first answers to the question were somewhat evasive. Indeed the burden of his evidence is that he actually sold the place to Mr. Morris some months before, and, when confronted by the fact that he had announced that he had sold his farm and had advertised his personal property for sale before the time he claimed the sale had been made, he insisted that he was relying on the assurance given him by Mr. Morris several months before. On the other hand, Mr. Morris stated that, although he had talked about the farm to Miller, he had never agreed to purchase it, and no negotiations were pending between him and Miller during the month of December, 1927,

It is first insisted that the petition was demurrable, in that it failed to allege that Woodward ever notified Miller that he had secured a purchaser, or that Woodward put Miller in touch with the purchaser, or ever demanded that Miller should execute a deed or make a conveyance. In support of this position counsel relies on Offutt & Oldham v. Winters, 227 Ky. 56, 11 S. W. (2d) 979. It is true we held in that case that the broker has the burden of informing the owner, if ignorant of the fact that the purchaser is one found by him, but we made it plain that the rule was confined to a case of non-exclusive agency. Where the contract gives the agent the exclusive right to sell during a definite and fixed period, such agent is entitled to the commission even if the property be sold during that time by another person, including the owner. Therefore, when a prospective purchaser appears, the presumption is that he came at the instance of the agent having the exclusive right to sell, and the owner who goes ahead and completes the negotiations acts at his peril so far as the payment of the commission is concerned. The petition sets out the contract and appropriately alleges that in accordance with its terms and provisions, and within the time specified,

plaintiff procured a purchaser ready, able, and willing to purchase said farm, to whom the sale of same was made. In our opinion the petition was sufficient. Carter v. Hall, 191 Ky. 75, 229 S. W. 132; Hartig v. Schrader, 190 Ky. 511, 227 S. W. 815.

Another contention is that Miller was entitled to a directed verdict. It not being necessary to allege that Woodward informed Miller that Miss Beerman was the purchaser obtained by him, it was not necessary to prove it. However, the evidence leaves no doubt that Miller did know that Miss Beerman was the purchaser procured by Woodward. But the point is made that Miss Beerman refused to sign the contract and stated that she desired to consult her brother-in-law, and that Woodward took no further steps to bring about the trade. It must not be overlooked that Woodward and his assistant showed the farm to Miss Beerman, that she expressed herself as pleased with it, and declined to sign until she consulted with her brother-in-law. She admits, however, that she did consult her brother-in-law, and that they agreed to take the place, provided they could get it at the price stated in the contract. In other words, all the circumstances indicate that she was pleased with the farm, and that she and her brother-in-law made up their minds to buy it at the price named in the contract before beginning negotiations with Miller. Therefore, it was for the jury to say whether Woodward procured a purchaser ready, able, and willing to buy on the terms and within the time specified in the contract.

The correctness of instruction No. 1 is challenged on the ground that it did not require the jury to believe that it was necessary for Woodward to introduce the prospective purchaser to Miller, or to bring the purchaser and Miller together, or to notify him that the purchaser was one procured by him. As we see it, the actual introduction of the parties or the bringing them together was not essential in the circumstances here presented. It was sufficient if by his efforts his principal and a purchaser ready, able, and willing to buy upon the terms named by his principal were brought together and a sale resulted, although the subsequent negotiations and sale may have been concluded by the principal. Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153. Complaint is also made of the court's failure to define the words "procure and furnish." In the first place, the meaning of these

words is so generally understood as not to require a definition. In the next place, the court was not requested to define the words, and therefore appellant is not in a position to complain. Pitman v. Drown, 176 Ky. 263, 195 S. W. 815.

Complaint is also made of the court's failure to give instruction X offered by appellant. The instruction is as follows: "The court instructs the jury that it was incumbent on the plaintiff to put defendant in touch with any prospective purchaser and unless plaintiff did so plaintiff did not within the meaning of the law procure said purchaser, and if the jury so believes they will find for the defendant." This instruction was offered for the purpose of presenting the theory that to entitle him to a commission Woodward had to introduce Miss Beerman to Miller or notify him that Miss Beerman was the purchaser whom he had procured. As we have heretofore seen, these steps were not required. All that was necessary was for Woodward to furnish during the life of the contract a purchaser ready, able, and willing to buy on the terms fixed by the principal, and this issue was fairly submitted to the jury.

While instruction No. 2 given by the court is subject to criticism, yet, considered as a whole, and in connection with the other instructions, it was not so misleading as to be prejudicial to the substantial rights of appellant.

Judgment affirmed.