# Brooks v. Tipton.

Oct. 31, 1944.

Strother Kiser for appellant.

William B. Gess and John O. McKinstry for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Mary C. Tipton, a real estate broker of Lexington, Kentucky, recovered a judgment for $750 against Cleona Woodbridge Brooks for her commission on the sale of a farm owned by Mrs. Brooks, who defended on the grounds that she had never listed the farm with Mrs. Tipton and that Mrs. Tipton did not procure the purchaser.

Mrs. Brooks owned a farm near Versailles in Woodford county containing 170.55 acres. Mrs. Tipton testified that it was listed with her for sale for $30,000 in 1939, and that she made numerous efforts to sell it. In the autumn of 1940 she went with Mr. and Mrs. Brooks

to look at a farm near Louisville, Kentucky, with the view of making an exchange of the two farms. Nothing resulted from this trip. About the middle of December, 1940, she introduced E. M. Glass, Jr., to Mrs. Brooks. Glass had an option to purchase for $30,000 the American Horseman, a magazine owned by Matt C. Cohen. Glass and his father, E. M. Glass, Sr., owned the Commercial Printing Company of Lexington, and had a contract with Cohen to print the American Horseman. They desired to retain this contract and when they learned that Cohen wished to sell the magazine procured the option, hoping to sell it to someone who would continue the printing contract with them. Mrs. Tipton learned of this option and told E. M. Glass, Jr., that Mrs. Brooks might be interested in purchasing the magazine. She took Glass to appellant's home where the purchase of the magazine was discussed. Negotiations between Glass and appellant continued on the basis of a trade of the farm to Cohen for the magazine. Cohen rejected the plan for a trade, but finally agreed to sell his magazine for $25,000, and on February 14, 1941, gave to E. M. Glass, Sr., a written option to purchase, the option to remain in effect until April 1, 1941. On March 11, 1941, E. M. Glass, Sr., assigned his interest in the option to Cleona Woodbridge Brooks, and on the same day Mrs. Brooks and Matt C. Cohen entered into a written contract whereby Mrs. Brooks became the purchaser of the American Horseman for $25,000. She was to pay $10,000 in cash and execute a note for $15,000. Under the contract she had the privilege of substituting a negotiable promissory note, executed and delivered by E. M. Glass, Sr., payable to her order in the principal sum of $15,000 and indorsed by her with recourse, the note to be secured by a mortgage executed by Glass covering all the real estate, machinery, and personal property used by him in the conduct of the business of the Commercial Printing Company. On February 21, 1941, a deed in which Mrs. Brooks and her husband were the grantors and E. M. Glass, Jr., was the grantee was prepared. This deed conveyed to E. M. Glass, Jr., the 170.55-acre farm of Mrs. Brooks. The recited consideration was $7,500 cash and a note for $17,500 executed by E. M. Glass, Sr., secured by a mortgage on all the property used by Glass in the conduct of the business of the Commercial Printing Company. Mr. Brooks was in Colorado and the deed was sent to him. The notary's certificate shows that the instrument was

acknowledged by Mr. and Mrs. Brooks to be their act and deed on March 24, 1941. The deed was lodged for record in the Woodford county clerk's office on April 5, 1941, and five days later the land was conveyed by E. M. Glass, Jr., to his father, E. M. Glass.

Appellant first contends that her farm was never listed for sale with appellee, and, if listed, the contract employing appellee had expired long before the land was sold. Appellee testified that the land was listed with her in 1939; that she made repeated efforts to sell it with appellant's knowledge and that only a few days before she introduced E. M. Glass, Jr., to Mrs. Brooks the latter and her husband went with appellee to look at a farm near Louisville, Kentucky, for the purpose of arranging a trade of that farm for the Woodford county farm. Mrs. Brooks denied that she listed the farm with Mrs. Tipton, but admitted she made a trip with her to Louisville early in December, 1940; that she went to Mrs. Tipton's office in Lexington, Kentucky, several times after E. M. Glass, Jr., was introduced to her, and that Mrs. Tipton was present on some occasions when the proposed trade of the farm to Cohen for the magazine was discussed with Glass. Mrs. Tipton's version of the transaction is supported by many circumstances, but aside from this the conflicting testimony of the two principals was sufficient to take the case to the jury on the issue of a contract.

Appellant complains because a letter written to her by Mrs. Tipton on March 25, 1941, was admitted in evidence. It is said it contains self-serving declarations which are highly prejudicial. A letter dated December 16, 1940, written to Mrs. Brooks by Mrs. Tipton had been admitted in evidence. The letter contained the following statements:

"In regard to a commission on farm, will say that I hereby agree to the same proposition which I made to you and Mr. Brooks in the Judge Dawson matter. I have nothing to do with a commission out of the sale of the paper, because I think that Matt Cohen is pricing it flat. However, Melvin is doing it because he wants to hold the printing of the magazine."

In the letter Mrs. Tipton agreed that an old debt which her son owed to Mrs. Brooks should be deducted from the commission. It seems that the debt was for

hay which he had purchased from Mrs. Brooks. On the day this letter was written or on the following morning and before it had been delivered, Mrs. Brooks went to Mrs. Tipton's office in Lexington and a carbon copy of the letter was handed to her. This letter, of course, was properly admitted in evidence. The letter dated March 25, 1941, merely amplified the statements contained in the earlier letter concerning the son's debt and could not have been prejudicial.

It is finally contended, in effect, that Mrs. Tipton introduced to Mrs. Brooks E. M. Glass, Jr., who was acting as the agent of Matt C. Cohen and, since the sale was not made to Cohen but to Glass, individually, the appellee was not the procuring cause of the sale and is not entitled to compensation. As stated by appellee, the question is, may the owner of real estate, after listing the same with a broker, sell the property to a third party, individually, who was introduced by the broker to the owner as the agent of a prospective purchaser and thus escape liability for the broker's commission? The general rule is that a real estate broker is entitled to compensation where he has been the procuring cause even though the employer enters into negotiations with the person procured and concludes the sale. Clarke v. People's Roller Mills Company, 206 Ky. 686, 268 S. W. 333; Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153. The rule applies although the owner, in order to make a sale, accepts a price less than that stipulated to the broker. Consolidated Realty Company v. Graves, 291 Ky. 456, 165 S. W. 2d 26; Annotation in 128 A. L. R. 430. There can be no doubt that appellee was the procuring cause of the sale of appellant's land. She procured the ultimate purchaser although during the initial negotiations he acted as the agent of another. When his principal refused to trade his property for appellant's farm, the agent purchased the farm and appellant purchased the property the principal desired to sell. Thus the purpose of each owner was achieved. Appellee started negotiations which culminated in the sale of the property to the person introduced to appellant, and there was no break in the continuity of events. There was nothing which could have led appellant to believe that she was dealing with an entirely new party and was not to pay commissions. She acted with full knowledge of all the facts. As said in Averill v. Hart & O'Farrell, 101 W. Va. 411, 132 S. E. 870, 875:

494

"The expression 'procuring cause' as used in the books refers to the cause originating a series of events which without break in their continuity result in the accomplishment of the prime object of the employment of the agent, which, as stated, is the procurement of a purchaser ready, willing, and able to buy the land on the principal's terms."

And further:

"The rule of reason, which seems to be supported by all of the authorities on the subject, is that the broker is entitled to his commission, although he may not have conducted all of the negotiations leading to the sale; it being sufficient if he set in motion the machinery by which the work was done, which without break in its continuity, was the procuring cause of the sale."

In Henry v. Stewart, 185 Ill. 448, 57 N. E. 190, a real estate agent introduced a prospective purchaser to the owner of property which had been listed with the agent. The owner later sold to the party introduced by the broker, but it developed that he was acting as the agent for others. It was held that whether he was himself the purchaser or an agent of the real purchaser was a matter of no concern to the defendant, and it was held that the owner was liable to the procurer for a commission.

We think the trial court properly overruled appellant's motion for a directed verdict in her favor, and submitted the case to the jury.

The judgment is affirmed.