## HAMILTON v. TAYLOR et al.

Court of Appeals of Kentucky.
June 6, 1952.

D. L. Pendleton, Rodney Haggard, Winchester, for appellant.

S. T. Davis, Harvey T. Lisle, Winchester, for appellees.

MOREMEN, Justice.

Appellant, O. L. Hamilton, a real estate agent, seeks reversal of a judgment which denied to him a fee claimed for the sale of a farm in Clark County.

Appellees were owners of this farm and on November 23, 1948, by parol contract, they gave Hamilton an exclusive listing to January 15, 1949, and empowered him to sell the property for $100,000. The commission was agreed to be 3% of the sale price and, if no sale were made, he would be reimbursed for his expense in advertising and showing the place.

No interested prospects were found during the exclusive period and on January 15, the field was opened to agents or brokers who would be able to obtain a purchaser at a price agreeable to the owners.

The owners reduced the price of the farm on several occasions. Mr. Hamilton produced one offer of about $85,000 but it was refused by appellees.

Appellees sold the farm on the 8th day of April, 1949, to Mr. Earl Moore, and the question here presented is whether or not appellant is entitled to a fee.

Appellant claims that he is entitled to a fee for either of the following reasons: (1) that he produced a purchaser, Mr. Thomas Swope, who offered to buy the property for $80,000, which was accepted; or because (2) he was instrumental in bringing about the ultimate sale to Mr. Earl Moore. He produced evidence intended to show that after he obtained his original contract he spent in advertising and showing the place the sum of $243.12, and continued his efforts after the exclusive feature of the contract had expired. He interested several parties in the place but they could not come to terms as to price. On the 5th day of April, as a result of his efforts, Mr. Tom Swope became interested in purchasing the place at $80,000. He informed one of the appellees, Mr. Claude Taylor, of the offer and was in turn referred to another appellee, Mr. Bill Taylor, who told him to have Mr. Harvey Lisle, attorney, draw the contract. On the same day, April 6, he and Swope went to Lisle's office where, after some delay, he was told that the contract would not be ready until the next afternoon about four o'clock; that after he had communicated Swope's offer a great deal of activity on the part of appellees was generated with the result that the property was sold to Mr. Earl Moore on April 8, in an attempt to avoid payment of his commission. An attempt was made by careful cross-examination to show that the purchase price paid by Moore was $80,000 instead of $81,000, as testified to by witnesses for appellees.

Appellant also introduced evidence to support his alternative claim that he was entitled to a commission from the sale to Moore because he was, in fact, the first person who had shown the place to Moore and had advised appellees that Moore was a prospective purchaser under the general rule that a real estate broker is entitled to commission where he has been the procuring cause of the sale even though the owner enters into negotiations with the person so procured and consummates it. Brooks v. Tipton, 298 Ky. 490, 183 S.W.2d 496. We will not re-tell here Hamilton's narration of his negotiations with Moore because we believe it is sufficient to say that if the

jury had, in fact, found for appellant, his testimony would have served as a proper base for such a verdict.

Appellees concede that they owe appellant the sum of $243.12 which he expended for sales promotion purposes, but deny that he is entitled to a commission by reason of the sale. They introduced proof that one of the appellees had turned down the offer of $80,000 and that Hamilton had never been given authority to sell the farm for $80,000, nor had he been authorized by anyone to close the deal with Swope. Appellees met appellant's second contention with proof to the effect that Marcus Lisle was the first one who had interested Moore in the farm and that all of the conversations and actions leading up to and concluding the final consummation of the sale by written contract were the result of the efforts of Marcus Lisle. Earl Moore, the purchaser himself, corroborates this statement.

■ The trial court was confronted with a difficult factual situation when he prepared the instructions given. Appellant had presented alternative claims. There was a dispute about whether Earl Moore had purchased the property for $80,000 or $81,000. There was a dispute as to whether appellant had been instrumental in the sale of the property to Moore. A controversy existed about whether appellant had ever informed appellees after his contract was no longer exclusive that Moore wanted to buy the property, or was even in the market for the property. There was a conflict in the testimony concerning who was the catalytic means of the sale's final consummation and a dispute as to whether appellees ever agreed to sell the property to Tom Swope for $80,000. This condition resulted in awkward, although we believe accurate instructions when they are considered as a whole. This court has grave doubts but that some portions of the case were submitted to the jury about which the court might well have directed a verdict for appellees. However appellant was in no manner injured by this surplusage.

■ Instruction No. 1 required a determination (1) of whether plaintiff had procured a purchaser willing to pay the price paid by Earl Moore, that is $80,000 or $81,000 whichever the fact was; and (2) if he had such a willing purchaser, had he told defendants about it before they sold to Moore? The instruction then directed the jury to find for the plaintiff if they first found in the affirmative that he had produced such a purchaser and had communicated this knowledge to appellees. In Offutt & Oldham v. Winters, 227 Ky. 56, 11 S. W.2d 979, 980, we placed upon the non-exclusive broker the burden of informing the principal, as owner ignorant of the fact, that purchaser had been procured, and said:

"When ignorant of the efforts of the broker, the owner has the right to act on the assumption that he alone is making the sale, and oftentimes he is thereby induced to accept a reduced price which he would not accept if he believed that he had to pay a commission. To avoid this situation we must either place on the owner the duty to inquire, or on the broker the duty to inform the owner that he had found the purchaser. The owner employs the broker to make the sale. The broker is to be paid for his services, and not for the services of the owner. In view of the relationship, and of the necessity that the broker's efforts be the procuring cause of the sale, we conclude that he has the burden of informing the owner, if ignorant of the fact, that the purchaser is one found by him, to the end that the owner may not be misled into accepting a reduced price for the property on the theory that he will not have to pay a commission to the broker."

Instruction No. 2 apparently attempted to cover the law which might be applicable in a case were appellant had actually procured Moore as a purchaser but had not informed appellees of the fact and it was made plain in this instruction that if he did procure him, he must have been ready to purchase at the price of either $80,000 or $81,000, whichever the actual sale price was in fact.

■ Instruction No. 3 advised the jury that even if appellant had "procured" Earl Moore as a purchaser, it was still neces-

sary to show that appellant was the person chiefly responsible for bringing about the sale. The word, "procured," is not defined, and perhaps another phrase would have been better, but this instruction did submit a theory of law to which appellees were entitled, because in Higgins v. Miller, 109 Ky. 209, 58 S.W. 580, we said:

"The brokers acted independently of each other, and, in order to ascertain who is entitled to the commission, we must determine which one of the agents was the efficient cause of the sale. In a case where there is but one broker, it can be told without difficulty. The same rule cannot apply where a number of agents, acting independently, are endeavoring to consummate a sale of property, as where there is only one. When it is openly in the hands of a number of agents, they all know that each will probably be active in his effort to consummate a sale; that each has the right to solicit a purchaser whenever an opportunity is offered; that each knows he has competitors in the efforts he is putting forth to make a sale; that each knows, if he fails to effect a sale, another agent is likely to do so by applying his powers for driving a bargain, and may succeed. While these competitive efforts are going on, the owner of the property is silently awaiting for an acceptable offer by one of the agents who has undertaken to make a sale for him. Neither of the agents can complain of him because another agent is actively endeavoring to consummate a sale. Our opinion is that, when property has been listed for sale with a number of real-estate agents, the one who succeeds in bringing the seller and purchaser together, and induces them to enter into the contract, is the one who has earned the commission; and this is true, regardless of the question as to who first introduced the seller and purchaser."

Instruction No. 4 presented what we believe was the principal issue between the parties and it reads as follows:

"You are further instructed that if you believe from the evidence that there was an agreement between said plaintiff and said defendants by which defendants agreed that if plaintiff procured a purchaser of the tract referred to in the evidence at the price of $80,000.00 the defendants would pay to plaintiff a commission of 3% of such price and further believe from the evidence that while said agreement was in effect and before sale had been made by defendants to said Earl Moore the said plaintiff procured and produced to defendants Thomas M. Swope as proposed purchaser and said Swope was then ready, able and willing to purchase said land at said price of $80,000.00, then you will find for plaintiff under this Instruction, 3% on $80,000.00 and unless you so believe you will find for defendants unless you find for plaintiff under the above numbered Instructions as to commission claimed on sale to said Earl Moore."

[redacted] The difficult theories involved here could only be presented by rather complex instructions, and we are of the opinion that when read together these instructions fairly stated the questions to be determined and were not prejudicially unsound.

The judgment is therefore affirmed.