**Lewis BASS, d/b/a Bass & Weisberg Realtors, Appellant,**

v.

**Roland FOSTER, Appellee.**

Court of Appeals of Kentucky.

Feb. 4, 1972.

Fred M. Goldberg, Rocco J. Celebrezze, Goldberg & Lloyd, Louisville, for appellant.

Richard A. Revell, Louisville, for appellee.

PALMORE, Judge.

This is a suit to recover the balance of a commission on the sale of real estate. Appellee, Foster, engaged appellant, Bass (d/b/a Bass & Weisberg Realtors), to sell a trailer court owned by Foster. Bass found a purchaser by the name of Thiel for $170,000, $12,000 of which was paid down. The buyer agreed to assume certain existing mortgages and executed two notes in favor of the seller, one in the amount of $8,000 payable in four semiannual installments beginning June 30, 1968, and the other in the amount of $135,337.95 payable over 20 years at the rate of $970.70 per month beginning December 2, 1967.

On October 23, 1967, before final execution of the purchase and sale contract, Foster and Bass made a written agreement that Foster would pay Bass a commission of $13,000, $4,000 of which was to be paid at closing and the $9,000 balance at the rate of $150 per month plus $2,000 every six months until paid. The concluding sentence of this agreement was as follows:

"It is understood if purchaser defaults and stops paying and seller must take property back—the monthly payments and $2,000 every six months be discontinued."

Thiel took possession of the trailer court, operated it for several months, and made the payments required by his contract with Foster until June 2, 1968. Meanwhile, he came to Foster in the latter part of April, 1968, and told him he was losing money and wanted to know if Foster would be interested in taking the property back. Foster said he was not much interested, because he had contracted for another place himself. Thiel then said something would have to be done, and Foster agreed to think it over for a few days. The May 2, 1968, payment was made. Several days later Thiel and Foster talked again and Foster told Thiel that if he could not make any more payments he,

Foster, would take the property back. Thiel said if that was the best he could do he guessed he was going to have to do it. Foster agreed that in such event he would tear up the notes.

Thiel did not make the payment due on June 2, 1968, and on June 10, 1968, Foster repossessed the property. The sale contract had made no provision with respect to a conveyance, so the title had remained in Foster and there was no foreclosure.

Both parties moved for summary judgment following the taking of Foster's deposition, in which the facts were developed. The trial court gave Bass a judgment for $2,000 representing the payment due him on April 23, 1968 (six months from the date of the agreement between Bass and Foster), but adjudged that Thiel was in default when Foster took the property back and Foster therefore did not owe anything further on the commission.

Bass contends that because there was an amicable agreement between Thiel and Foster leading to the repossession there was no "default" in the proper and legal sense of the word.

We have no difficulty in accepting the definition of "default" as being a nonpayment without consent of the obligee. We think it is clear, however, from Foster's testimony that his willingness to cooperate with Thiel and take the property back without a foreclosure proceeding was not an inducing factor in Thiel's discontinuing the payments due under the contract. Thiel had put him on notice that he could not comply with the contract. A default apparently was inevitable. That Foster agreed with Thiel on the steps that would be taken incident to the impending discontinuance of performance did not divest it of its character as a "default".

Bass argues also that the buyer and seller may not defeat a broker's right to a commission by dealing around him, or even by cancelling the contract. That is true. We need not cite the authorities. But in

this instance Bass and Foster had a written agreement defining the circumstances under which the fee was to be collectible. Bass agreed that the portion falling due after a default and repossession would not be payable. The only question, then, is whether a default and repossession took place, and we hold that they did.

Bass complains that he was not consulted by Foster in connection with the termination of Thiel's contract. The answer is that if he wished to be consulted he should have put it in the agreement. Without an agreement in that respect we are of the opinion that all Foster owed Bass was to act reasonably and in good faith. Surely it was not unreasonable and not a breach of good faith toward Bass for Foster to discuss the matter with Thiel and to effect a settlement which had all the advantages of a foreclosure and none of the costs.

The judgment is affirmed.

HILL, MILLIKEN, NEIKIRK, OSBORNE and REED, JJ., concur.

STEINFELD, C. J., not sitting.