**TEC CORPORATION et al., Plaintiffs,**

v.

**NUCLEAR DYNAMICS, INC., an Arizona corporation, Defendant.**

Civ. A. No. 1574.

United States District Court,
E. D. Kentucky,
Pikeville Division.

Sept. 18, 1973.

As Modified Sept. 20, 1973.

**1166**

William G. Craig, Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., for plaintiffs.

Joe F. Walton, Phoenix, Ariz., C. Kilmer Combs, Pikeville, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMANSDORFER, District Judge.

This matter is before the Court upon cross-motions for Summary Judgment in an action brought to recover commissions on the sale of operating coal mining properties in Floyd County, Kentucky.

Jurisdiction is asserted and found under 28 U.S.C. § 1332.

The Floyd County coal mining properties of a non-party partnership, Potter and Walters Coal Company, were for sale by the owners in the year 1971 for the sum of Three Million ($3,000,000.00) Dollars in cash as evidenced by a written option dated February 6, 1971 granted for no consideration to a non-litigant, Iley B. Browning, Jr. The option expired on February 28, 1971. On February 12, 1971 that option was assigned by Browning to an Indiana Corporation, the plaintiff TEC Corporation (hereinafter referred to as TEC). The assignment was accompanied by a letter agreement which stipulated that Browning and TEC were equal partners in the option and, as a consequence, in any commission profit derived from the sale of the properties of Potter and Walters Coal Company.

After the expiration of the option on February 28, 1971 TEC, a closely held corporation of its president Thomas Egan, Louis Egan, his brother, and Robert E. Barbre, continued their efforts to evoke interest in the properties from potential buyers. On July 13, 1971 the defendant Nuclear Dynamics (hereinafter referred to as Nuclear) wrote to Louis Egan expressing an interest in the properties which had been brought to the attention of the McAlester Fuel Company which subsequently forwarded the letter to Nuclear for their consideration. On July 21, 1971 Robert E. Barbre responded for Louis Egan and advised Nuclear of the acreage, equipment, coal reserves and production data on the properties. The letter also set forth terms of an installment sale for Three Million Two Hundred Thousand ($3,200,000.00) Dollars which Barbre had no authority to make. The purchaser was to pay all agent's compensation.

On August 11, 1971 Browning secured from Potter and Walters another option, again without consideration, for the exclusive right to purchase the subject properties for Three Million Two Hundred Thousand ($3,200,000.00) Dollars cash up to the terminal period ending midnight, September 15, 1971. The option was formally released on September 9, 1971 by Browning to permit Nuclear to take an option under the date of August 11, 1971, acknowledged and delivered on September 9, 1971 which granted until October 1, 1971, the exclusive right to purchase for Three Million Two Hundred Thousand ($3,200,000.00) Dollars in cash.

All parties in litigation by letter of September 3, 1971 agreed that Nuclear would pay Browning Seventy-Five Thou-

sand ($75,000.00) Dollars; TEC Seventy-Five Thousand ($75,000.00) Dollars; Louis Egan and Robert Barbre, jointly, Fifty Thousand ($50,000.00) Dollars on the following basis:

> "Such payment shall become due and payable only in the event that (and at the time that) Nuclear Dynamics, Inc. shall exercise its option to purchase under the terms of a certain option to be dated September 9, 1971 between the Potter and Walters Coal Company, a partnership between Robert E. Potter and Walter E. Walters, Jr."

Although extended until midnight of October 15, 1971, the Nuclear option was not exercised. By letter of August 30, 1971, Nuclear advised Barbre that further correspondence with the brokers would be through Browning. On November 5, 1971, Nuclear notified Browning of its intent to deal directly with the owners of the coal properties. Nuclear also indicated its willingness to pay Browning One Hundred Thousand ($100,000.00) Dollars for his services as a geologist. One (1) day later Nuclear, in another letter to Browning, set out an arrangement under which Browning would receive Seventy-Five Thousand ($75,000.00) Dollars instead of the initial One Hundred Thousand ($100,000.-00) Dollars with Nuclear furnishing up to another Twenty-Five Thousand ($25,-000.00) Dollars if Browning had to disburse any part of his fee.

On November 8, 1971 Nuclear contracted directly with the property owners and secured a contract to buy the Floyd County properties for Two Million Eight Hundred and Fifty Thousand ($2,850,000.00) Dollars on terms of Two Million Two Hundred Thousand ($2,200,000.00) Dollars in cash and the balance by two hundred and fifty thousand (250,000) shares of Nuclear Ten ($0.10) Cent par value common stock which then was trading over the counter for about Five Dollars and Fifty Cents ($5.50) a share. Nuclear consummated the purchase arrangement on the terms it negotiated on December 30, 1971.

Thereafter plaintiffs brought suit to recover the commission amounts set out in the letter agreement of September 3, 1971 under the unaltered agreement that the purchaser would pay the sale commission.

The "procuring cause" doctrine has been established law in Kentucky for many years; and, generally, where the seller is responsible for an agent's commission, a sale satisfactory to the owner, even if made on altered terms, will not defeat the agent's claim for commission. Hamilton v. Taylor, Ky., 249 S.W.2d 730, 731 (1952); Brooks v. Tipton, 298 Ky. 490, 183 S.W. 2d 496 (1944). A significant difference arises where specific written conditions exist between the parties. Where an agreement, specific in its terms as to the conditions which must occur before a commission is to be paid and is not fulfilled as to the specific conditions, the agent's claim will be denied, Bass v. Foster, Ky., 476 S.W.2d 181 (1972); Reedy v. Beauchamp, 307 Ky. 409, 412, 211 S.W.2d 393 (1948); C. Robert Peter & Co. v. Fix, 225 Ky. 198, 7 S.W.2d 1040 (1928), unless there is evidence of an intention to deal around the broker and defer the sale until a time in which the circumstances could not occur with an intent to circumvent the broker's right to his commission.

Without hesitation this Court would hold the rule in Kentucky where a buyer is responsible for the commission to be that the buyer is entitled to the purchase on the terms made by the broker before liability for payment of the commission arises, unless there is evidence of bad faith in the failure to purchase, whatever the reason, on those terms. Bass v. Foster, Id., at 182, 183. It is equally clear that where a material question involving the state of mind of the parties arises, the matter cannot properly be disposed of by Summary Judgment. Riley-Stabler Construction Co. v. Westinghouse Electric Corporation, 401 F.2d 526, 527 (5th Cir. 1968).

Pursuant to Rule 56(d), F.R.Civ.P. it is determined that the sole issue in the matter to be litigated is whether Nuclear exercised good or bad faith, as to the plaintiff, in purchasing directly from the owners the Floyd County coal properties after the agreement of September 3, 1971.

Plaintiffs' Motion for Summary Judgment is overruled.

Defendant's Motion for Summary Judgment is overruled.