Tommy **MAYO** and Pam Mayo, Appellants,

v.

**CENTURY 21 ACTION REALTORS, INC., Appellee.**

No. 90–CA–002469–S.

Court of Appeals of Kentucky.

Jan. 24, 1992.

Richard H. Lewis, Lewis, Thomas & Carter, P.S.C., Benton, for appellants.

Bard K. Brian, Paducah, for appellee.

Before LESTER, C.J., and HUDDLESTON and WILHOIT, JJ.

HUDDLESTON, Judge.

This is an appeal from a summary judgment awarding Century 21 Action Realtors, Inc. (Century 21) a $3,450.00 commission, plus interest, pursuant to an exclusive-listing real estate contract with Tommy and Pam Mayo.

On September 17, 1987, the Mayos entered into a "Multiple Listing Sales Agency Contract" with Century 21 granting the company the exclusive right to sell their home for $63,500.00. The agreement contained an "extension" clause which provided that:

> [I]f the property is contracted to be sold or exchanged within three months after the expiration of this contract to anyone with whom the party of the second part [Century 21] has negotiated while this contract was in force, then the party of the first part [the Mayos] agrees to pay to party of the second part *6%* of the gross amount of such sale or exchange....

During the initial three-month period, Michael Ormes, an agent with ERA, a member of the MLS service, contacted Century 21 to set up an appointment so that he could show the property to Anthony and Mandy Cole. According to his deposition, Ormes showed the property to the Coles two or three times, apparently unbeknownst to the Mayos. After the contract expired on March 8, 1988, the Mayos reduced their price to $57,500.00 and entered into a contract of sale with the Coles.

On April 8, 1988, the day of closing, Century 21, through its principal broker, Connie Duncan, contacted the Mayos by telephone and demanded payment of a sales commission. According to Pam Mayo's affidavit, she inquired as to why the realtors had not earlier disclosed to them that the Coles had been shown the home. Duncan then explained that his attorney had advised him not to do so. The closing was completed as planned.

Twelve days later, this action for breach of contract was filed by Century 21. The Mayos pled equitable estoppel, arguing that by reducing the purchase price they had materially changed their position in reliance on the termination of the listing agreement and that Century 21 knew well in advance of April 8, 1988, that a contract had been signed.

On October 9, 1990, the Mayos' motion for summary judgment was overruled and Century 21's motion for summary judgment was granted. The court rejected the Mayos' estoppel argument, holding that they could have inquired of Century 21 or the Coles as to whether or not the Coles had previously viewed the property. This appeal followed.

The Mayos argue that *Hamilton v. Taylor*, Ky., 249 S.W.2d 730 (1952) lends support to their position that it was the broker's duty to inform them that the Coles had been shown the property while the exclusive-listing contract was in effect. In *Hamilton*, the Taylors, the owners of a farm, entered into an exclusive-listing contract on November 23, 1948, empowering Hamilton to sell their property for $100,-

000.00. The contract was set to expire on January 15, 1949. When no prospects were found by January 15th, the field was opened to any agent or broker able to obtain a purchaser at an agreeable price. The Taylors sold the farm on April 8, 1949, to one Earl Moore. Hamilton sued for a commission alleging, *inter alia*, that he was the first person who had shown the place to Moore and that he had advised the Taylors that Moore was a prospective purchaser.

Denied a commission, Hamilton appealed challenging the jury instructions. One instruction complained of required the jury to determine whether Hamilton had found a willing buyer and whether he *had told the Taylors about it before they sold their property to Moore*. If so, the broker was entitled to his commission.

Kentucky's high court first recognized the general rule that a real estate broker is entitled to a commission where he has been the procuring cause of sale, even though the owner enters into negotiations with the person so procured and consummates the sale. *Brooks v. Tipton*, 298 Ky. 490, 183 S.W.2d 496 (1944).

The instruction was upheld based on *Offutt & Oldham v. Winters*, 227 Ky. 56, 11 S.W.2d 979, 980 (1928), where the burden was placed upon a *non-exclusive* broker to inform the principal, as owner ignorant of the fact, that the purchaser had been procured by the broker. In *Offutt*, there was a non-exclusive contract for the sale of a farm. During the time the farm was listed with the brokers, they described the farm to one John Turner, who agreed to view the property with the brokers, but later reneged. Turner instead went to the farm by himself and dealt directly with the sellers. In a suit for the sales commission, the court acknowledged that Winters, the seller, could, by the exercise of ordinary care, have known that Turner had come to the farm and was offering to purchase it through the broker's efforts. However, the Court found for the seller, reasoning as follows:

> When ignorant of the efforts of the broker, the owner has the right to act on the assumption that he alone is making the sale, and oftentimes he is thereby induced to accept a reduced price which he would not accept if he believed that he had to pay a commission. *To avoid this situation we must either place on the owner the duty to inquire, or on the broker the duty to inform the owner that he had found the purchaser.* The owner employs the broker to make the sale. The broker is to be paid for his services, and not for the services of the owner. *In view of the relationship, and of the necessity that the broker's efforts be the procuring cause of the sale, we conclude that he has the burden of informing the owner, if ignorant of the fact, that the purchaser is one found by him, to the end that the owner may not be misled into accepting a reduced price for the property on the theory that he will not have to pay a commission to the broker.* There being no charge of bad faith, and it not being alleged that Winters knew, or that the circumstances were such that he should have known, that the purchaser was one found by the broker, it follows that the demurrer to the petition as amended was properly sustained. *Id.* 11 S.W.2d at 980. (Emphasis supplied.)

This rule was held to apply only in the case of a nonexclusive agency. Where the contract gives the agent an exclusive right to sell during a specified period, the agent is entitled to the commission even if the property is sold during that period by the owner or by another person. *Miller v. Woodward*, 234 Ky. 631, 28 S.W.2d 961 (1930).

In *Blankenship v. Fullerton's Adm'x.*, 230 Ky. 795, 20 S.W.2d 983 (1929), an oral agreement was made by a broker to sell some property. No definite time period was set. In a suit to collect a sales commission, it was held that where no definite time period is given the broker within which to sell the property, the owner could not make a sale to a person furnished by the broker and escape a commission. However, in order for such liability to attach, the owner would have to know at the time he was making the sale that the party to whom he was selling had been furnished by

the broker. This rule applies regardless of whether or not the owner had reduced his price. See also 12 Am.Jur.2d, *Brokers,* § 232 (1964).

In *Reedy v. Beauchamp,* 307 Ky. 409, 211 S.W.2d 393 (1948), the owner of a farm made a "blanket proposition" that he would pay a 5% commission to any person who sold his farm for $15,000.00 before September 15, 1946. Sometime in July, the broker took a Mr. Barnes to view the property, but the latter would not agree to pay $15,000.00 for it. Around September 29, 1946, Barnes went to the farm and purchased it directly from the owner for $14,000.00. In a suit by the broker for a sales commission, the court held that if the parties have a time limit in the contract covering the prospective sale of the property, the broker must make the sale within that time limit in order to be entitled to compensation. If the broker fails to sell within the time set out in the contract and the owner thereafter sells the property to a purchaser which had earlier been produced by the broker, the owner is *not* liable for the commission unless he deferred the sale until after the time limit with the intention of circumventing the broker's rights. In other words, the owner is not liable for the commission unless he acted in bad faith. Accord, *TEC Corporation v. Nuclear Dynamics,* 518 F.2d 1286 (6th Cir.1975).

None of the foregoing Kentucky authorities is precisely in point. However, an Ohio case is. In *King v. Dean,* 19 Ohio St.2d 17, 48 O.O.2d 10, 249 N.E.2d 45 (1969), there was an exclusive three-month listing contract stating that a commission must be paid if the owner's property was sold or exchanged during the continuance of the contract, or if it was sold or exchanged within three months thereafter "to anyone with whom you had negotiated during the term of the contract." Within the initial three-month listing period, the broker showed the property to a client, but was unsuccessful in securing a sale. About two weeks after the expiration of the exclusive listing period, another realtor showed this same client the property and, less than three months later, a sale was consummat-

ed. The broker was held not to be entitled to a commission.

Pursuant to the exclusive listing contract executed between the [broker] and [the sellers], the [broker] was their agent for the purpose of obtaining offers and to facilitate the sale. The law imposes upon such an agent a duty to report his negotiations with prospective purchasers to his principals, especially where he expects to rely upon those negotiations as a basis for claiming a commission on the sale of their property after the expiration of the exclusive listing period. See annotation, "Real-estate Broker's Right to Commissions * * *," 142 A.L.R. 275, 290. This duty is imposed upon an agent to avoid unfairness of the kind exhibited in this case.

Here, the owners of the property in question were not informed that the broker had engaged in any discussion with the [purchasers] about the sale of their property. [The broker] admitted this on direct examination. Since [the sellers] were not so informed, they had no reason to suspect that [the broker] might claim a commission for selling their property even though they became obligated to pay a commission to another broker for selling it. In failing to notify his principals that he had "negotiated" with the [purchasers] for the sale of [the sellers'] property, the [broker] breached the very contract upon which he relies, and his recovery thereunder should have been denied. *Id.* 249 N.E.2d at 47.

To the same effect is *Horton–Cavey Realty Co. v. Spencer,* 37 Colo.App. 96, 544 P.2d 998 (1975). See also Annot., "Brokers' Fees—Sales After Listing," 51 A.L.R.3d 1149, § 7 (1973). We believe that the reasoning in *King* is sound.

There is no suggestion in this case that the Mayos knew, or, in the exercise of reasonable care, should have known, that Century 21 had shown their property to the ultimate buyer while the exclusive-listing contract was in effect. Thus, there is nothing to suggest that they acted in bad faith toward Century 21 in agreeing to sell their home to the Coles.

Accordingly, we hold that it was the duty of Century 21, as the Mayos' agent, to inform them of any showing on which it intended to rely during the extension period as basis for a commission. Because of its failure to do so, and because there has been no allegation of bad faith on the part of the Mayos, we reverse the summary judgment granted to Century 21 and remand with directions to grant the Mayos' motion for summary judgment.

All concur.